Frank J. LAIRD, Trustee Under the Trust Agreement of February 24, 1988 and Vernon C. Keesey, Jr., Individually and on Behalf of a Class of the Minority Shareholders of the Clearfield & Mahoning Railroad Company, a Pennsylvania Corporation and Derivatively on Behalf of the Clearfield & Mahoning Railroad Company, Appellants,

v.

The CLEARFIELD & MAHONING RAILWAY COMPANY, a Pennsylvania Corporation, Buffalo, Rochester & Pittsburgh Railway Company, a Pennsylvania Corporation Buffalo & Pittsburgh Railroad, Inc., a Pennsylvania Corporation, CSX Transportation, Inc. a Virginia Corporation, R.J. Corman Railway Company/Pennsylvania Lines, Inc. a Pennsylvania Corporation and Richard J. Corman and Consolidated Rail Corporation and David R. Irvin, Appellees.

Superior Court of Pennsylvania.

Argued Dec. 10, 2003.
Filed Feb. 20, 2004.
Reargument Denied April 29, 2004.

Tom P. Monteverde, Philadelphia, for Laird, appellant.

Walter Wall, Altoona, for Irvin, appellee.

Paige MacDonald-Matthes, Harrisburg, for CSX, appellee.

Kim C. Kesner, Clearfield, for Clearfield & Mahoning, appellee.

John Snyder, State College, for R.J. Corman, appellee.

Before: FORD ELLIOTT, BOWES and MONTEMURO *, JJ.

MONTEMURO, J.

¶ 1 This is an appeal from a stipulated order awarding judgment in favor of Appellants in the amount of $17,552.01 in an action involving claims of contract breach, tortious interference with contractual relations, conspiracy to defraud, and breach of fiduciary duty.

¶ 2 Appellants are minority shareholders of Appellee Clearfield and Mahoning Railroad Company (C & M), a paper company incorporated in 1892 by Appellee Buffalo, Rochester & Pittsburgh Railway Company (BR & P), the holder of the majority interest, apparently to avoid antitrust problems. The sole asset of C & M, given to it by BR & P, was 27.4 miles of trackage, which was then leased back to BR & P under the terms of an 1893 agreement. The 1893 lease, of which the term was for C & M's corporate existence, specified that BR & P was responsible for maintenance of the trackage and payment of taxes. Most pertinently, the lease provided for disbursement of semi-annual dividends of $1.50 per share,[1] an undertaking endorsed on the face of each stock certificate. Fulfillment of this obligation continued without interruption until December of 1996.

¶ 3 In 1992, 17.4 miles of C & M's trackage was abandoned with the approval of the Surface Transportation Board (STB),[2] leaving C & M with slightly over 6 miles of usable track connecting C & M Junction with Clearfield, Pa., and 2 miles of turn-around track. The unused track then became available for salvage.

---

* Retired Justice assigned to Superior Court.

1. The certificates guarantee the payment of 3% of the par value of the stock, agreed to have been $50.00, to be paid in "United States Gold Coin." No argument has been advanced that the manner of payment should be as specified on the certificates.

2. The Surface Transportation Board is an independent adjudicatory body within the Department of Transportation and deals primarily with railroads.

¶ 4 In December of 1996, Appellee Richard J. Corman, owner of R.J. Corman Railway Company/Pennsylvania Lines, Inc. (RJCRC/PL), purchased the control stock of C & M for $10,000 from its then owner Appellee Consolidated Rail Corporation (Conrail),[3] and also received from Conrail assignment of the rights and duties defined by the 1893 lease. However, at a January 1997 meeting of the C & M Board of Directors, Board Chairman Corman announced that RJCRC/PL intended to terminate the 1893 lease, and to negotiate instead a Trackage Rights Agreement to compensate C & M for the use of its track upon terms and conditions consistent with rates current in the industry.[4] The reason given for the change was that no corporate income tax returns had been filed and no taxes paid for the previous several years, and the corporate treasury contained no money to pay dividends. The minority shareholders were advised of the Board's action and that the January 1997 dividend would not be paid until the company's financial position while operating under the Trackage Agreement had stabilized. Appellants then filed their complaint as a class action by shareholders advancing derivative claims, and seeking

> immediate payment by one or more of the defendants of the semi-annual dividends due on (C & M) stock commencing January 1, 1997, and a judicial determination that plaintiffs and the plaintiff class are entitled to have all of the properties of the C & M as well as its corporate existence maintained, and future dividends paid when due by the defendants Richard J. Corman ... and R.J. Corman Railway Company/Pennsylvania Lines ..., and payment guaranteed by the defendant Buffalo, Rochester and Pittsburgh Railroad ... by contract, and by the defendant CSX Transportation, Inc. ... as long as CSX is the operator in fact of the BR & P, for the balance of the C & M's corporate existence.

(Appellant's Second Amended Complaint at 2).

¶ 5 Thereafter, what the trial court characterizes as an "an array of orders" (Trial Ct. Op., 2/12/03, at 2) were entered which variously appointed a special panel to consider the viability of the derivative claims; dismissed all the claims contained in the complaint except breach of contract, and limited damages as to that claim to the January 1, 1997, dividend plus interest, a total of $17,551.01; dismissed Appellants' exceptions to the report of the special panel; denied Appellants' request to file a third amended complaint; granted the respective motions of Appellee David Irvin and Appellee Richard J. Corman for summary judgment; and denied summary judgment to Appellees BR & P, CSX and Conrail as to Appellants' breach of contract claim, trial of which was accordingly scheduled for June 24, 2002. However, on that date, after a jury was selected, counsel for the parties agreed to the entry of a stipulated Order, which was duly filed. Appellants then lodged post trial motions listing the orders of court to which they objected, and the various forms of relief they sought. Approximately three months later and subsequent to the entry of judgment on the consent order, however, Appellants submitted a Rule to Show Cause, which was accepted by the trial court. A footnote in this document reads as follows:

---

**3.** In October of 1996, Conrail had merged with Appellee CSX Transportation, the successor of the Baltimore & Ohio Railroad which had acquired BR & P.

**4.** The STB found this change exempt from its oversight authority.

Note: the types of relief which would be considered under this proposed Rule are considerably narrower than were requested by plaintiffs' Motion for Post–Trial Relief. Plaintiffs are limiting the relief requested in the proposed Rule for the purpose of limiting the issues to be considered by this Court in ruling on plaintiffs' Motion for Post–Trial Relief and by the Superior Court in the event of an appeal by plaintiffs from this Court's ruling on their Motion for Post–Trial relief.

¶ 6 Appellants' post trial motions were denied, and this appeal, their fourth approach to our Court[5] during the progress of this litigation, followed, presenting six issues.[6] The first four of these challenge 1) the trial court's appointment of a special committee to assess the viability of Appellants' derivative claims; 2) the trial court's dismissal on preliminary objections of their claims for tortious interference and conspiracy to defraud, and its subsequent refusal to allow amendments to their complaint; 3) the trial court's entry of summary judgment in favor of Appellees Corman and Irvin on three counts of the complaint; and 4) the trial court's refusal to permit them to recover damages for the "fair value" of their C & M shares, limiting their recovery to a single dividend payment. The remaining issues respectively demand the entry of judgment in their favor "on the whole record," (Appellant's Brief at 1) and request reassignment of any further proceedings to a different trial court judge "to avoid the continued appearance of prejudice and unfairness." (*Id.*)

¶ 7 Before addressing any of these, we must decide whether our review is affected by the terms of the stipulated order entered *in lieu* of trial which reads, in its entirety as follows:

NOW, this 24th day of June, 2002, this being the day and date set for trial by jury into the above captioned matter; upon agreement and stipulation of the parties, it is the ORDER of this Court:

1. That the subject of the 1893 lease is authentic and admissible;

2. That R.J. Corman Railroad Company/Pennsylvania Lines, Incorporated, is a successor lessee pursuant to the 1893 lease;

3. That had dividends been paid on January 1, 1997, pursuant to the 1893 lease and the shared(sic) certificates, they would have been paid to minority shareholders representing 8,798 shares of C & M Railroad in the amount of One Dollar and ($1.50) Fifty Cents per share, or Thirteen Thousand On Hundred Ninety-seven ($13,197) Dollars;

4. Neither R.J. Corman Railroad Company/Pennsylvania Lines, Incorporated, nor any of the prior lessees has ever paid the January 1, 1997, dividends;

5. The 1893 lease was terminated on January 24, 1997, and based on prior rulings of this Court, the obligation to pay dividends was also terminated at that time. Therefore, the only dividend pay-

---

5. In a response to the appeal taken immediately prior to the instant one, this Court quashed on the basis that cross claims among Appellees were still outstanding. The parties then stipulated to severance of matters pertaining to indemnity and/or contribution.

6. We note with disapproval that Appellants have omitted any statement of the applicable standards of review on the basis that "the Pennsylvania Rules of Appellate Procedure include no such requirement." (Appellants' Reply Brief at 10). We refer Appellants to Pa. R.A.P. 2111(2).

ment at issue in this trial is the January 1, 1997, dividend payment;

6. For purposes of this proceeding, Defendants stipulate that the contract contained in the 1893 lease and the shares of stock certificate was breached, preserving to themselves the right to raise this issue again should, following appellate review, further trial be necessary.

And it is further stipulated that the proper amount of damages to be awarded as limited by previous rulings of this Court is Seventeen Thousand Five Hundred Fifty-two Dollars and One ($17,-552.01) Cent, including dividends in the amount of Thirteen Thousand One Hundred Ninety-seven ($13,197) Dollars as set forth above and interest for the period January 1, 1997, through June 30, 2002 (66 months at $65.985 per month.)

In light of the above stipulation, further trial scheduled this date shall be unnecessary.

(Consent Order, dated 6/24/02).

■ ¶ 8 Our Supreme Court in *Lower Frederick Twp. v. Clemmer*, 518 Pa. 313, 543 A.2d 502, 510 (1988) (citations omitted), has explained that

[a] consent decree is not a legal determination by the court of the matters in controversy but is merely an agreement between the parties—a contract binding the parties to the terms thereof. As a contract, the court, in the absence of fraud, accident or mistake, ha[s] neither the power nor the authority to modify or vary the terms set forth.

Moreover, because it is a contract, a consent order must be construed as would a contract to determine the intent of the parties, and to do so the surrounding circumstances must be considered, especially "the situation of the parties when the contract was made and the objects they ap-

parently had in view and the nature of the subject matter." *Id.* (citation omitted).

■ ¶ 9 There has been no allegation that the consent order was the product of fraud, accident or mistake. This appeal is taken from the judgment entered on that order. The question then becomes whether, as the trial court noted, post trial motions were properly submitted. We find that they were not.

■ ¶ 10 A consent order is not a decision of the court, which, as already noted, has no authority to modify or vary the terms of such an order. *See also Sabatine v. Commonwealth*, 497 Pa. 453, 442 A.2d 210, 213 (1982). The purpose of Pa.R.C.P. 227.1 governing post trial motions, however, is to provide the trial court with an opportunity to correct its mistakes, prior to entry of a final order. *Chalkey v. Roush*, 569 Pa. 462, 805 A.2d 491, 494 n. 9 (2002). Indeed, the Note to Rule 227.1(c) provides in pertinent part that "[a] motion for post-trial relief **may not be filed** to orders disposing of preliminary objections, motions for judgment on the pleadings or for summary judgment, motions relating to discovery, **or other proceedings which do not constitute a trial.**" (emphasis added). Therefore, without either court participation in the construction of the consent order or court authority to make alterations, post trial motions serve no valid function here and were not properly brought before the court. Moreover, the consent order does not contain language indicating agreed-upon anticipation of further judicial examination of those claims on which the trial court has ruled. *Compare Keystone Bldg. Corp. v. Lincoln S. & L. Ass'n.*, 468 Pa. 85, 360 A.2d 191, 195 (1976). Nor does it reserve the right to take further action upon, *e.g.*, Appellees' failure to pay the stipulated damages. *Compare Id.; Universal Builders Supply,*

*Inc. v. Shaler Highlands Corp.*, 405 Pa. 259, 175 A.2d 58, 59 (1961). The only reservation concerns **Appellees'** right to further examination of the breach of contract claim should that become necessary. Indeed, the consent order itself, as well as the later rule to show cause, seem clearly to limit the questions to be posed by Appellants for trial court or appellate consideration, as well as the relief sought. Our task at this point is to identify which if any of those questions survive.[7]

¶ 11 We would first emphasize the most salient points in the consent order, that: "the proper amount of damages to be awarded as limited by previous rulings of this Court is ... ($17,552.01) ... for the period January 1, 1997, through June 30, 2002[.]" (Consent Order, dated 6/24/02, at 2). Moreover, "[i]n light of the above stipulation, further trial scheduled this date is no longer necessary." (*Id.*). The very restrictive definition of the damage claim, which is based solely on the only remaining count of the complaint, that is, breach of the 1893 lease, obviates the necessity for further examination of any of the other counts of Appellants' complaint, and renders the order a final and appealable one. Although Appellants seem to be operating on the premise that the consent order allows them to proceed as if a trial had been held, such is not the case; they are bound by the terms of the order. Despite the fact that their appeal purports to challenge, in addition to the judgment entered on the consent order, six other of the trial court's rulings, each of these is forestalled by the consent order's limitations. This is not a situation, such as that in *Matternas v. Stehman*, 434 Pa.Super. 255, 642 A.2d 1120 (1994), where suit was brought subsequent to the consent judgment on a claim not contemplated by the settlement. As the trial court observes, Appellants have consistently sought two forms of relief, payment of the dividend accrued by December of 1997, and reinstatement of the 1893 lease. The former is assured by the stipulation as to damages. The latter is no longer an option because a separate action in which Appellants unsuccessfully contested as fraudulent a cash-out merger, effective November 2, 2001, of a wholly owned subsidiary of RJCRC/PL with C & M, was referred to this Court which quashed the appeal as moot, and allocatur was denied by the Pennsylvania Supreme Court.[8] Nothing further remains.

¶ 12 As our Supreme Court has held, a consent decree is conclusive in nature, having "important consequences. [It] has a *res judicata* effect, binding the parties with the same force and effect as a final decree rendered after a full hearing upon the merits." *Pennsylvania Human Relations Comm'n v. Ammon K. Graybill, Jr., Inc. Real Estate*, 482 Pa. 143, 393 A.2d 420, 422 (1978). Accordingly, we affirm the judgment entered on the consent order in this case.

¶ 13 Judgment affirmed.

¶ 14 Appellees' request for sanctions and application to strike are hereby **denied as moot**.

---

7. Because judgment was not entered on the consent order until October 8, 2002, the November 8, 2002, appeal is timely. We make no determination as to the necessity for judgment to be entered under circumstances other than those presented by this case.

8. Still pending in the trial court is litigation on the reservation of dissenters' rights entitling the 12 remaining shareholders, who include Appellants, to an appraisal proceeding.