916 A.2d 1091

Frank J. LAIRD, Trustee Under the Trust Agreement of February 24, 1988 and Vernon C. Keesey, Jr., Individually and on Behalf of a Class of the Minority Shareholders of the Clearfield & Mahoning Railroad Company, a Pennsylvania Corporation and Derivatively, on Behalf of the Clearfield & Mahoning Railroad Company, Appellants,

v.

The CLEARFIELD & MAHONING RAILWAY COMPANY, a Pennsylvania Corporation, Buffalo, Rochester & Pittsburgh Railway Company, a Pennsylvania Corporation, Buffalo & Pittsburgh Railroad, Inc., a Pennsylvania Corporation, CSX Transportation, Inc., a Virginia Corporation, R.J. Corman Railway Company/Pennsylvania Lines, Inc., a Pennsylvania Corporation, Richard J. Corman, and Consolidated Rail Corporation, and David R. Irvin, Appellees.

Supreme Court of Pennsylvania.

Submitted Aug. 11, 2005.

Decided Feb. 21, 2007.

Tom P. Monteverde, Esq., Philadelphia, for Frank J. Laird, et al.

Kim C. Kesner, Esq., Clearfield County Solicitor's Office, Clearfield, for Clearfield & Mahoning Railway Company.

Walter F. Wall, Esq., Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C., Altoona, for David R. Irvin.

John Alexander Snyder, Esq., McQuaide, Blasko, Fleming & Faulkner, Inc., John W. Blasko, Esq., McQuaide, Blasko, Fleming & Faulkner, Inc., State College, for R.J. Corman Railway Co., et al.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## *OPINION*

Justice EAKIN.

Appellants, the minority shareholders of the Clearfield & Mahoning Railroad (C & M), filed a complaint against C & M and its successors (appellees) advancing derivative claims for breach of contract, breach of fiduciary duties, tortious interference with contractual relations, and conspiracy to defraud. Appellee Buffalo, Rochester, & Pittsburgh Railway Company (BR & P) created and incorporated C & M in 1892. BR & P gave C & M ownership of 27.4 miles of railroad trackage, which C & M then leased back to BR & P under a lease agreement executed in 1893. The lease agreement also provided for the disbursement of semi-annual dividends of $1.50 per share of C & M stock. These dividend disbursements were made continuously until 1996, when appellee Richard Corman, owner of R.J. Corman Railway Company/Pennsylvania Lines, Inc. (CRC/PL), purchased the controlling stock of C & M from appellee Consolidated Rail Corporation (Conrail), the successor to BR & P. Conrail also assigned Corman the rights and duties under the 1893 lease.

At a Board of Directors meeting in 1997, Corman announced CRC/PL planned to terminate the 1893 lease and negotiate a new trackage agreement that would reflect the current industry rates. The minority shareholders were advised their dividends would not be paid, beginning January 1, 1997, until the company's financial situation stabilized under the new trackage agreement. Appellants thus initiated this action by filing a complaint as a class action by the minority shareholders. The trial court issued several pre-trial rulings whereby it either directly or effectively dismissed certain defendants as well as all claims save the breach of contract claim.

On the day trial was scheduled to begin, appellees offered to stipulate to the amount owed on the remaining breach of contract claim. The parties discussed the language and effect of the stipulation on the record, and—without admitting liability for a breach—the parties agreed appellants were entitled to

$17,552.01. The trial court entered the stipulated order, thus obviating the need for a trial. Appellants sought appellate review of the trial court's pre-trial rulings that dismissed certain claims and defendants. The Superior Court held the parties' stipulated agreement amounted to a consent decree, which generally precludes appellate review,[1] and that by entering into the agreement, appellants effectively waived their rights to challenge any pre-trial rulings. *Laird v. Clearfield & Mahoning Railway Company,* 846 A.2d 118, 122–23 (Pa.Super.2004) (citing *Lower Frederick Township v. Clemmer,* 518 Pa. 313, 543 A.2d 502, 510 (1988) (consent decree not legal determination by court of matters in controversy, merely contract between parties binding them to terms thereof)).

We granted review, limited to the issue of whether the Superior Court properly determined the stipulated order entered in lieu of trial was a consent decree, which had the effect of foreclosing appellants' right to seek review of the pre-trial rulings that eliminated various claims and defendants. As the parties do not dispute the relevant facts, this issue presents a question of law; our standard of review is thus *de novo,* and our scope of review is plenary. *See Commonwealth v. Weston,* 561 Pa. 199, 749 A.2d 458, 460 n. 8 (2000).

Paragraph Six of the stipulated order states, "[the parties] stipulate that the contract . . . was breached, preserving to themselves the right to raise this issue again should, *following appellate review,* further trial be necessary." *Laird,* at 122 (emphasis added). The Superior Court interpreted this to mean "[t]he only reservation concerns *Appellees'* right to further examination of the breach of contract claim. . . ." *Id.,* at 123 (emphasis added). The Superior Court concluded the order "does not contain language indicating agreed-upon anticipation of further judicial examination of those claims on which the trial court has ruled." *Id.,* at 122. We disagree.

Based upon our review of the order in question and the context in which it was entered, we find the parties contem-

---

1.  *Bethlehem Steel Corporation v. Tri State Industries, Inc.,* 290 Pa.Super. 461, 434 A.2d 1236, 1239–40 (1981).

plated that appellants would challenge the trial court's pre-trial rulings on appeal. The transcript from the parties' in-court discussion of the language and effect of the stipulation with the judge supports this conclusion.

In the course of these discussions, appellants expressed their concern that agreeing to the terms of the stipulation would result in a waiver of their appeal rights; the trial court responded that, "if you agree with the stipulations ... the Court can fashion an order that would preserve any and all rights you have for appellate review on any prior proceeding in this case." N.T. Hearing, 6/24/02, at 19. The court further stated, "[I]f you're successful on appeal I think your remedy is going to be a new trial...." *Id.*, at 21. In addition, in response to appellees' counsel's speculation that the parties' willingness to stipulate made the present controversy moot, the court replied, "[T]his issue should not prevent a resolution of this matter today in getting this whole thing into a posture for appeal to an appellate court.... [I]f [appellants] are successful on appeal and the matter is remanded for a trial before a court, then you are not precluded from ... raising the issue of whether ... a breach of contract occurred." *Id.*, at 23.

Based upon the above facts, we disagree with the Superior Court's determination that the language in Paragraph Six was meant to reserve only appellees' right to seek appellate review of the breach of contract claim. Rather, we find the language in Paragraph Six of the order was written in anticipation appellants would appeal from the pre-trial rulings and, should they succeed on appeal and be awarded a trial, appellees would not be bound by their stipulation in Paragraph Six, and would thus be able to defend against a claim for breach of contract at any such trial.

The Superior Court buttressed its decision by noting, "[a]p-pellants have consistently sought two forms of relief," namely, payment of the dividend and reinstatement of the 1893 lease. *Laird*, at 123. The court found neither of appellants' claims for relief are viable since the payment of the dividend is assured by the stipulation, and the reinstatement of the lease

is no longer an option due to the quashal of a separate action as moot. *Id.* Therefore, even if appellants were able to go to trial on a claim not disposed of by the stipulated order, they have exhausted their remedies and nothing further remains to be awarded. However, appellants sought more than just the two forms of relief above; their complaint also sought damages for tortious interference with contract, conspiracy to defraud, and breach of fiduciary duties. Appellants are not precluded from pursuing damages for these claims.

■ Without deciding whether the Superior Court correctly determined the stipulated order constitutes a consent decree, we find that where, as here, (1) the trial court's order is entered in lieu of trial pursuant to a stipulated agreement which contemplates appellate review,[2] and (2) the issue being appealed is not disposed of in the stipulated order,[3] appellate review is not precluded.

The dissent advocates the approach taken by our sister states and cites case law that categorically precludes any appeal from a consent decree. We respectfully disagree with the dissent's reasoning as it is based upon the assumption that the stipulated order in this case is a consent decree. Neither the trial court or the parties referred to the stipulated order as either a consent decree or a consent order. The Superior Court acted *sua sponte* when it deemed the stipulated order to be a consent order. In light of the circumstances giving rise to the order in question, however, we believe it would be imprudent to make the same assumption. Accordingly, it

**2.** *See, e.g., Keystone Building Corporation v. Lincoln Savings and Loan Association,* 468 Pa. 85, 360 A.2d 191, 195 (1976) (conduct of parties and decree's language indicated decree not intended as adjudication of issues not addressed therein); *Coleman v. Coleman,* 361 Pa.Super. 446, 522 A.2d 1115, 1120 (1987) ("a stipulation entered into by the parties with the intention of limiting the scope of the proceedings may effectively leave open other issues not addressed for future determination.").

**3.** *See Fogel Refrigerator Company v. Oteri,* 398 Pa. 82, 156 A.2d 815, 817–18 (1959) (stipulation by parties limiting petition to open judgment to issue of forgery made judgment *res judicata* only to defense of forgery); *GPU Industrial Intervenors v. Pennsylvania Public Utility Commission,* 156 Pa.Cmwlth. 626, 628 A.2d 1187, 1193 (1993) (where elements of *res judicata* not met, preclusion of matters not fully litigated discourages compromise or narrowing of issues).

would be improper to adopt a bright-line rule unconditionally precluding an appeal from a consent decree in this case since it is unclear whether the order in question falls into that category. Our decision is not a rejection of the rule promoted by the dissent, we simply do not find the holdings from the cases it cites inevitably apply where, as here, the parties who negotiated the order from which appeal is sought did not consider it a consent decree and did not intend for it to be treated as such. The dissent asserts *Keystone* is not controlling here since that case addressed the preclusive effect of a consent decree in a second action, rather than its effect on a party's right to challenge pre-trial rulings on direct appeal. Although we acknowledge the holding in that case is not controlling here, we find the reasoning expressed in that decision—*i.e.*, that it is appropriate to examine the parties' intentions and the circumstances giving rise to the order—is equally relevant here.

Under the facts presented, we find the Superior Court erred in determining the stipulated order effectuated a waiver of appellants' rights to appeal from the trial court's pre-trial rulings. We therefore reverse the order of the Superior Court and remand for a decision on the merits of appellants' claims of trial court error. Jurisdiction relinquished.

Justice SAYLOR and BAER and Justice BALDWIN join the opinion.

Chief Justice CAPPY files a dissenting opinion in which Justice CASTILLE joins.

Chief Justice CAPPY, dissenting.

This appeal came to us on a grant of allocatur limited to the following question:

Whether the trial court's order rendering judgment "upon agreement and stipulation of the parties," with damages "as limited by previous rulings of this Court" and in the context of the trial court's on-the-record contemplation of "an order that would preserve any and all rights [Petitioners] have for appellate review on any prior proceedings in this case" had

the effect of foreclosing Petitioners' appeal rights relative to such prior proceedings and/or rulings?

Because I do not believe that the majority sufficiently explores the legal issues underlying this question and sets forth a test unsupported by prevailing jurisprudence, I dissent.

Appellants, the minority shareholders of Appellee Clearfield & Mahoning Railroad Company ("C & M"), brought a shareholder's derivative suit against C & M, its successors and principals, Richard Corman ("Corman") and David Irwin ("Irwin"), contending that the majority shareholders of C & M wrongfully withheld dividends. The suit raised claims for breach of contract, breach of fiduciary duty, tortious interference with contractual relations, and conspiracy to defraud. The trial court dismissed the claims for conspiracy to defraud and tortious interference on preliminary objections. Later, the court granted summary judgment on the claim for breach of fiduciary duty and dismissed Corman and Irwin from the suit. This left only one remaining claim, breach of contract, and only the railroad defendants. The court also limited damages as to the contract claim to those arising after January 1, 1997, the effective date of the dividend freeze, plus accrued interest.

On the day scheduled for trial, the remaining parties had a pre-trial conference with the trial judge expressing their intention to enter a stipulation as to the contract claim so as to obviate the need for trial and facilitate Appellants' immediate appeal of the prior interlocutory orders. In the negotiations fashioning the stipulation the trial court told the parties:

I think you can fashion a stipulation or an order whereby that, for purposes of settlement only, you are not contesting or are stipulating to a breach of contract with the reservation that if Plaintiffs are successful on appeal and the matter is remanded for trial before a court, then you are not precluded from, at that time, raising the issue of whether, in fact, a breach of contract occurred.

N.T. 6/24/02 at 23. The parties subsequently entered into said stipulation whereby C & M admitted to breach of contract and

the corresponding damages.    On October 15, 2002, the trial court entered judgment on the stipulation.[1]

Appellants took an appeal to the Superior Court raising six issues, challenging: 1) the trial court's appointment of a special committee to assess the viability of Appellants' derivative claims; 2) the trial court's dismissal on preliminary objections of their claims for tortious interference and conspiracy to defraud, and its subsequent refusal to allow amendments to their complaint; 3) the trial court's entry of summary judgment in favor of Appellees Corman and Irvin on three counts of the complaint; and 4) the trial court's refusal to permit them to recover the "fair value" of their shares in C & M, limiting their recovery to a single dividend payment.    Appellants' other two issues demanded entry of judgment in their favor "on the whole record" and sought to have the case remanded to a different trial judge.    *Laird v. Clearfield and Mahoning Railway Company*, 846 A.2d 118, 121 (Pa.Super.2004).

The Superior Court stated that before it could address any of the issues raised by Appellants, it was required to decide whether its very ability to review them was affected by the terms of the stipulated order entered in lieu of trial.    *Laird*, 846 A.2d at 121.    The court construed the judgment entered upon the stipulation of the parties as a consent decree.[2]    It then stated that, while Appellants were operating under the premise that the consent order allows them to proceed as

1.   On July 3, 2002 the Appellants filed a Motion for Post Trial Relief Pursuant to Pa.R.C.P. No. 227.1 seeking relief from the various orders entered in the course of the litigation, including the June 24, 2002 consent order.   The trial court denied the Motion stating, *inter alia*, that no trial took place and the issues raised in the Motion do not fall within the scope of Rule 227.1.   While ultimately not relevant for the determination of this case, the Superior Court affirmed the trial court's denial of the post trial motions, holding that the entry of the consent decree did not constitute a "trial" from which such motions may arise.   *Laird v. Clearfield and Mahoning Railway Company*, 846 A.2d 118, 122 (Pa.Super.2004).

2.   Throughout this opinion, as well as those cited herein, reference is made to consent *decrees* and consent *orders*.   The two terms are synonymous and are used interchangeably.   *Black's Law Dictionary* 336 (7th ed. abridged 2000).

though a trial had occurred, such was not the case. *Id.* at 123. Rather, the parties must be bound by the limitations of the consent order. The court held that review of each of the six issues raised by Appellants was forestalled by the consent order. *Id.* As such, it was unable to reach the merits of Appellants' claims.

The majority did not find it necessary to explore the Superior Court's determination that the stipulated order constitutes a consent decree from which no appeal may be taken. Instead, the majority merely sets forth a new *sui generis* rule permitting such orders to be appealed when the agreement contemplates appellate review and the issues being appealed are not the ones disposed of by the order. Majority Slip Opinion at 5–6. I believe that this approach skirts the issue of our grant of allocatur and ignores the key question of this case: whether a consent decree can serve as the final order from which a party may appeal prior orders of the trial court. This Court has addressed this issue in general terms and the Superior Court, the courts of our sister states, as well as federal courts, have done so specifically, holding that a consent decree cannot give rise to an appeal. As I agree with this approach, I believe that this Court should affirmatively adopt the rule that a consent decree between the parties cannot give rise to an appeal, even of collateral issues and affirm the holding of the Superior Court.

In *Lower Frederick Twp. v. Clemmer*, 518 Pa. 313, 543 A.2d 502, 510 (1988), we explained that "[a] consent decree is not a legal determination by the court of the matters in controversy but is merely an agreement between the parties—a contract binding the parties to the terms thereof." Further, *Black's Law Dictionary* 411 (6th ed.1991) states in regards to a consent decree that "it is not properly a judicial sentence, but is in the nature of a solemn contract or agreement, made under the sanction of the court, and in effect an admission by them that the decree is a just determination of their rights upon the real facts of the case, if such facts had been proven." In light of the above definitions, the stipulated order between the parties is clearly a consent decree. Rather than an adjudi-

cation by the court, the order merely sanctioned agreement of the parties regarding liability and damages for the breach of contract claim. *See* Consent Order, dated 6/24/02. As the order in question is clearly a consent order, it is necessary to examine the relevant law in determining whether such a decree might give rise to an appeal.

While this Court has not expressly addressed this specific issue, in *Brown v. Commonwealth of Pennsylvania Department of Health*, 495 Pa. 456, 434 A.2d 1179 (1981), we outlined the general principles underlying this question. There, we wrote, "[o]rdinarily, a party who consents to, or acquiesces in, a judgment or order cannot appeal therefrom." *Brown*, 434 A.2d at 1181. Further, the Superior Court specifically addressed whether an appeal may be taken from a consent decree in *Sarsfield v. Sarsfield*, 251 Pa.Super. 516, 380 A.2d 899 (1977).

In *Sarsfield*, appellee wife brought an action against appellant husband alleging non-compliance with their separation agreement and seeking an order of enforcement. Appellant filed preliminary objections challenging the equity jurisdiction of the court, which were overruled. The parties subsequently settled their disputes and entered into a consent order which was entered by the court. Appellant then appealed claiming that the court had erred in dismissing his preliminary objections. The Superior Court specifically stated that the threshold of the case was that the appeal arose from a consent order. *Sarsfield*, 380 A.2d at 900. The Court held that "[a] decree entered by consent of the parties is so conclusive that it will be reviewed only on a showing that an objecting party's consent was obtained by fraud or that it was based upon a mutual mistake." *Id.* at 901. Further, the proper avenue for such challenge is not an appeal, but rather "[a]ny move to modify or abrogate the consent order must be initiated in the court below." *Id.*[3] *See also M.N.C. Corporation v. Mount Lebanon*

---

**3.** The Superior Court majority then went on to address the issue of jurisdiction because "the nature of the case suggests the possibility of future hearings and orders." *Sarsfield*, 380 A.2d at 901. This discussion is, however, merely dicta, as the court had recognized that a

*Medical Center, Inc.,* 334 Pa.Super. 359, 483 A.2d 490, 492 (1984), (recognizing, in dicta, that a party may not appeal from a consent decree because he consented to the order, citing *Brown,* 434 A.2d at 1181).

The inability of a consent order to give rise to an appeal stems from the long-standing jurisprudential principle that a party must be aggrieved in order to lodge an appeal. Pennsylvania Rule of Appellate Procedure 501 states: "Except where the right to appeal is enlarged by statute, any party who is *aggrieved* by an appealable order ... may appeal therefrom." Pa.R.A.P. 501 (emphasis added). This Court has held that only an aggrieved party can appeal from an order entered by the lower court. *Commonwealth v. Polo,* 563 Pa. 218, 759 A.2d 372, 373 n. 1 (2000); *In re Elliott's Estate,* 388 Pa. 321, 131 A.2d 357, 358 (1957). On this note, we have held that a party prevailing in the lower court is not aggrieved and therefore may not bring an appeal. *See e.g., United Parcel Service, Inc. v. Pennsylvania Public Utility Commission,* 574 Pa. 304, 830 A.2d 941 (2003). By natural extension a party who consents to, or acquiesces in, an order is not aggrieved and cannot bring an appeal. *See Brown, supra.*

The majority of our sister courts addressing this issue have held that a party may not appeal from a consent order. Further, sister courts have held that even an express reservation by the parties of a right to appeal from a consent order will not confer jurisdiction upon the appellate court. For example, in *Globe American Casualty Company v. Chung,* 322 Md. 713, 589 A.2d 956, 957 (1991), the Maryland Supreme Court refused to entertain an appeal from a grant of partial summary judgment entered before a consent decree was entered. It explained that "[i]t is well settled that a party may not appeal from a judgment to which he has consented." *Globe American,* 589 A.2d at 958. Further, it stated that

consent order is not appealable. Apparently recognizing this, the concurring opinion of Judge Spaeth rests solely on the consent order. *Id.*

"where a party consents to judgment in a case, the party ordinarily may not appeal and obtain review of an earlier adverse ruling in that case." *Id.* Likewise, in *Amstar Corporation v. Southern Pacific Transport Company of Texas and Louisiana,* 607 F.2d 1100 (5th Cir.1979) the parties entered into a consent decree that specifically reserved the plaintiff's right to appeal prior adverse rulings. The Court dismissed the appeal *per curiam* holding, "[a]lthough the consent judgment contained a recognition that the plaintiff wished to appeal the issue of the limitation of damages, the fact that both parties freely consented to the entry of a final judgment precludes appeal from it." *Id.* In *Rauda v. Oregon Roses, Inc.,* 329 Or. 265, 986 P.2d 1157 (1999) the Supreme Court of Oregon explained the rationale barring all appeals, even of prior interlocutory orders, from a consent decree. It explained that a stipulated judgment does not become appealable simply because it contains words that purport to preserve one party's right to appeal some interlocutory ruling by the trial court because, "[a]s with all judgments, a stipulated judgment merges the purported errors of law committed by the trial court in its interlocutory orders. Those purported orders are not reviewable if the judgment itself is not appealable." *Rauda,* 986 P.2d at 1160.

The majority cites *Keystone Building v. Lincoln Savings and Loan Association,* 468 Pa. 85, 360 A.2d 191 (1976), for the proposition that a consent decree as to one issue will not constitute an adjudication of other issues not addressed therein, suggesting that such extraneous issues may be appealable. Majority Opinion at 327 n. 2, 916 A.2d at 1094 n. 2. The reliance on *Keystone* as to this particular issue is misplaced, however, as the Court addressed only whether a consent decree as to one issue of a case will have a preclusive effect on other issues between the parties *in a second action,* not whether a party can raise an appeal from a consent decree as to collateral interlocutory orders. In *Keystone,* the plaintiff first brought an action in equity asserting that the defendant was not remitting monies due under the contract at issue in

accordance with the terms thereof and seeking an order requiring the defendant to comply with the payment procedure and pay damages. The parties then entered into a consent decree merely setting forth their agreement on the proper procedures for payment. Thereafter, the plaintiff commenced a second action at law seeking damages for the defendant's prior failure to follow payment procedures. The defendant asserted that the issue of damages was rendered *res judicata* by the prior consent order. This Court held that the consent decree did not bar the action for damages as "[t]he conduct of the parties and the court, and the language of the decree itself, indicates that they did not intend the decree to act as an adjudication of whether there was a breach of contract by [defendant] rendering it liable for unascertained damages." *Keystone,* 360 A.2d at 195. As such, *Keystone* addresses only the *res judicata* effects of a consent order addressing but one of several issues, not the appealability from the order of prior interlocutory orders. Thus, it is not relevant to our analysis in this case.

While the majority of courts that have addressed this issue hold that a party may not raise an appeal, even of prior interlocutory orders, from a consent decree, a minority, including the United States Court of Appeals for the Third Circuit, has carved out a limited exception. According to the exception, when "it is clear from the record that the parties stipulated to a consent judgment with the express understanding that the party against whom judgment was entered would appeal a contested issue decided by the [trial] court, there is no reason to hold the right to appeal waived." *Keefe v. Prudential Property and Casualty Insurance Co.,* 203 F.3d 218, 223 (C.A.3, 2000). Thus, the exception will permit an appeal from a consent decree *only* in the case in which there is an express understanding that *the party against whom judgment is entered,* i.e. the party admitting liability, will appeal a prior order of the Court.

The facts of this case do not fall within the limited exception carved out by the minority of courts. Here, the language of

the consent decree does not expressly reserve appellate rights for Appellees, the parties against whom the judgment was entered. Rather, the order merely reserves to them the right to reopen the issue of liability on the breach of contract claim should *the Appellants* prevail on an appeal. As such, the minority view does not apply here.

I believe that instead of adopting the novel and unsupported test of the majority opinion, a test that stands apart from the jurisprudence of our sister courts, this Court should apply the rule prevailing in the majority of courts addressing this issue, including our Superior Court, which bars appeal from a consent order. Our Rules of Appellate Procedure and the decisions of this Court require that a party be aggrieved in order to bring an appeal. A party who consents to an order is not aggrieved. *Brown*, 434 A.2d at 1181. Further, an appeal must stem from a final order of the lower court in which it used its judicial power to make a legal determination of the matters in controversy. As we have held, a consent decree is merely a contract between parties that is given judicial sanction. *Lower Frederick Twp. v. Clemmer*, 518 Pa. 313, 543 A.2d 502 (1988). It is not an adjudication. Thus, according to the very language of the Rules and case law of this Commonwealth, an appeal may not arise therefrom.[4]

I agree with the majority that the record in this case illustrates that the parties contemplated that an appeal would be permitted as to the pre-decree interlocutory orders, and that the parties entered into the order with the express intention of creating an appealable final order. While I do not believe, as explained at length above, that we can disregard

4. I do not suggest that litigants are precluded from amicably settling the final remaining claim between them while preserving appellate review for prior interlocutory orders. On the contrary, our Rules permit a party to voluntarily discontinue a claim, Pa.R.C.P. No. 229, or obtain a voluntary nonsuit, Pa.R.C.P. No. 230. At this point, the last interlocutory order disposing of a claim will be the final order. Further, if appellate review results in the reinstatement of previously dismissed claims, the discontinued or nonsuited claims may be reinstated. Pa.R.C.P. No. 231.

the law so as to effectuate their intent, the parties are not without remedy. If a party believes that it entered into a consent decree by fraud or mistake, the proper recourse is not a challenge on appeal, but rather a collateral action on the decree itself to challenge its validity. *See Sabatine v. Commonwealth,* 497 Pa. 453, 442 A.2d 210, 212 (1981) (holding that a consent decree may be modified due to fraud, accident, or mistake) *Sarsfield,* 380 A.2d at 901 (holding that any move to modify or abrogate the consent order must be initiated in the court below), *see also* 16 Standard Pennsylvania Practice § 85:114. Thus, while the parties chose the wrong procedural vehicle to effectuate their intentions, one that deprives this and any appellate court of jurisdiction to entertain the substantive issues raised, they are not deprived of the opportunity to rectify their mistake and enter into an arrangement that will conform with their intentions.

This position does not constitute, as does the position of the majority, the creation of a new legal test. Nor is it a departure from prevailing jurisprudential views applied by the different courts of this nation. Rather, it merely applies the general principles that we have enunciated to the specific issue of this case, as our Superior Court has already done. As such, I would affirm the holding of the Superior Court dismissing the appeal in this case.

Justice CASTILLE joins this dissenting opinion.