# [J-96-2013] [MO: Baer, J.]
## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, OFFICE OF THE GOVERNOR | No. 10 MAP 2013 |
| | Appeal from the Order of the Commonwealth Court at No. 376 MD 2012, dated January 23, 2013 |
| v. | |
| SEAN DONAHUE AND THE OFFICE OF OPEN RECORDS | |
| APPEAL OF: OFFICE OF OPEN RECORDS | ARGUED: November 20, 2013 |

## CONCURRING OPINION

**MR. CHIEF JUSTICE CASTILLE**  **DECIDED: August 18, 2014**

I join the Majority Opinion, with the exception of footnote 6.[1] It disturbs me to have to write yet again in a case involving the oddities of the implementation and

---

[1] I have no objection to the Majority's use of the term exhaustion of statutory remedies. I simply distance myself from the distinction drawn in footnote 6 that suggests a substantive or practical difference between exhaustion of "statutory" versus "administrative" remedies.

I also note the characterization by the Office of Open Records of its exhaustion of statutory remedies claim as a jurisdictional imperative. The Majority notes that decisional law is not clear whether such claim implicates jurisdictional or prudential concerns. Accordingly, to the extent that the Majority Opinion addresses the exhaustion of statutory remedies as a jurisdictional concern, I view the expression as adopting the nomenclature used by the parties rather than a doctrinal pronouncement applicable across the board.

litigation stances of the Office of Open Records (the "OOR") involving the Right to Know Law ("RTKL"). Nevertheless, I am compelled to offer the following observations regarding the procedure by which this case reached the Court.

The dispute before the Court originated in a request for records submitted by a reporter to the Office of the Governor. The agency refused the request and, in the subsequent appeal, the OOR issued a broad procedural ruling premised upon Section 901 of the RTKL that, as the Majority correctly concludes in Part II of the Opinion, harmed the interests of the Office of the Governor ("Donahue decision"). See 65 P.S. § 67.901. Nevertheless, the OOR ultimately ruled in favor of the Office of the Governor, declining to order the release of the records by the agency; the Office of the Governor was handed a classic Pyrrhic victory, *id est*, a victory obtained at such a cost that it outweighs the benefit obtained.[2]

The Office of the Governor appealed the Donahue decision to the Commonwealth Court. In quashing the appeal, the Commonwealth Court capsulized the issue as follows: "Because petitioner is not aggrieved by the April 30, 2012 order but merely disagrees with an issue decided against it, it lacks standing to appeal the April 30, 2012 order." Order, 7/2/2013 (*per curiam*) (citing Ridgway's Magnetics Co. v. Unemployment Comp. Bd. of Review, 577 A.2d 969 (Pa. Cmwlth. 1990)). Nevertheless, with respect to the parallel declaratory judgment count, the Commonwealth Court overruled the OOR's preliminary objections, holding that the Office of the Governor did have standing to sue, premised upon the very same averment of harm caused by the Donahue decision that was insufficient to confer standing to appeal. On the merits, the Commonwealth Court ultimately agreed with the

---

[2] Reference is to Pyrrhus, King of Epirus, a son of Achilles and slayer of King Priam at the sacking of Troy, who, after invading Italy in 280 B.C., sustained heavy losses of his own troops in defeating the Roman legions at Asculum in 279 B.C.

Office of the Governor's interpretation of Section 901 of the RTKL. The Office of the Governor did not appeal the decision of the Commonwealth Court that it lacked standing to pursue a direct appeal of the Donahue decision. The lower Court's "standing to appeal" decision and the Office of the Governor's concession have inextricable practical implications on how this Court reaches the merits of the dispute over the proper interpretation of Section 901.

The merits of the dispute regarding Section 901 are before this Court in the direct appeal of the OOR from the Commonwealth Court's decision granting the Office of the Governor declaratory judgment relief. The OOR raises three questions. The second question -- addressed by the Majority in Part III of the Opinion -- asks "Whether the Commonwealth Court erred by finding it had jurisdiction over the Governor's original jurisdiction complaint alleging a misinterpretation of statutory law in the absence of any harm or constitutional question?" As the Majority notes, in its briefing of the question, the OOR conflates the distinct notions of jurisdiction, standing, and exhaustion of statutory remedies. See Majority Slip Op. at 12-13. The OOR's chief complaint, however, is that the Commonwealth Court lacked subject matter jurisdiction because the Office of the Governor failed to exhaust the available statutory remedies. Notably, the Office of the Governor's brief is not responsive to the OOR's actual arguments relating to the exhaustion of statutory remedies claim. Instead, the Office of the Governor suggests that the Commonwealth Court had original jurisdiction over the dispute because a declaratory judgment action is the sole means of obtaining review of the OOR's interpretation of Section 901. The argument is premised upon the notion -- unsupported by citation to the relevant rules of procedure, decisional law, or a principled analysis -- that standing to appeal an administrative agency decision and standing to bring a declaratory judgment action in the original jurisdiction of the Commonwealth

Court implicate distinct requirements of aggrievement.  For my part, the Commonwealth Court's decision and the Office of the Governor's concession relating to standing to appeal is the proverbial "elephant" in this room, with respect to which I offer the following.

The Commonwealth Court's standing decision and the related concession by the Office of the Governor have tenuous support in the plain language of the RTKL or of the Rules of Appellate Procedure.  Neither the RTKL nor the Pennsylvania Rules of Appellate Procedure purport to foreclose the appeal of a "prevailing" party -- the ultimate "winner" of a dispute -- upon that ground alone.  Section 1301 of the RTKL provides the general rule governing judicial review of OOR decisions: "a requester or the agency may file a petition for review or other document as might be required by rule of court with the Commonwealth Court" within 30 days of the OOR decision's mailing date.  Notably, Section 1301 does not articulate special rules of appealability applicable to RTKL cases.  Meanwhile, the rule of appellate procedure governing which persons may take or participate in appeals -- Rule 501 -- states that, "any party who is aggrieved by an appealable order . . . may appeal therefrom."  According to the commentary to Rule 501, "[w]hether or not a party is aggrieved by the action below is a substantive question determined by the effect of the action on the party, etc."  Pa.R.A.P. 501 & note.  Reading the relevant provisions together, it is apparent that the dispositive concern is whether a party is "aggrieved," which the note to Rule 501 directs is a substantive question determined "by the effect of the action on the party, etc."

I acknowledge that some decisional law may be read to suggest broadly that a prevailing party is, on that ground alone, not aggrieved and has no standing to appeal. See, e.g., Basile v. H & R Block, Inc., 973 A.2d 417, 421-22 & n.4 (Pa. 2009) (matter implicating narrow question of whether party is required to file protective cross-appeal to

preserve interlocutory issue for subsequent appeal); <u>Laird v. Clearfield & Mahoning Ry. Co.</u>, 916 A.2d 1091, 1097 (Pa. 2007) (matter implicating narrow question of whether party may be aggrieved by consent order to which parties agreed); <u>Wilson v. Transport Ins. Co.</u>, 889 A.2d 563, 577 n.4 (Pa. Super. 2005) (protective cross-appeal raising issue upon which lower court did not pass); <u>Ratti v. Wheeling Pittsburgh Steel Corp.</u>, 758 A.2d 695, 700 (Pa. Super. 2000) (same); <u>Hashagen v. W.C.A.B. (Air Products & Chemicals, Inc.)</u>, 758 A.2d 276, 277 n.2 (Pa. Cmwlth. 2000) (same). Other decisions, including that upon which the Commonwealth Court relied to dismiss the Office of the Governor's initial appeal, suggest a more nuanced analysis of standing to appeal, akin to that employed in determining standing to sue. <u>See</u> <u>Ridgway's Magnetics</u>, 577 A.2d at 970-71 (citing <u>Wm. Penn Parking Garage v. City of Pittsburgh</u>, 346 A.2d 269, 280 (Pa. 1975) and concluding that Ridgway "assert[ed] no injury that [wa]s either immediate or pecuniary").

This matter illustrates the difficulty with the notion of a bright line rule that a "prevailing" party or ultimate "winner" may not appeal a decision that otherwise directly harms its interests.[3] The Office of the Governor argues that the <u>Donahue</u> decision

_____

[3] In my capacity as the elected District Attorney of the City of Philadelphia, I was well aware of the phenomenon of being directly "aggrieved" by decisions in which my office "prevailed." For example, a direct defense appeal to the Superior Court could result in a published opinion laying down a broad statewide rule of great harm to a multitude of pending and future prosecutions, but nevertheless ultimately denying the defendant relief on that claim, leaving the prosecution up against the prevailing party proscription. <u>See</u>, <u>e.g.</u>, <u>Commonwealth v. Devers</u>, 546 A.2d 12, 15-19 (Pa. 1988) (criticizing Superior Court's requirements for punctilious adherence to technicalities of sentencing that developed from line of cases commencing with <u>Commonwealth v. Valentin</u>, 393 A.2d 935 (Pa. Super. 1978), in which Superior Court affirmed sentence while articulating rule that sentencing judge must make his reasons clear, have accurate information, including presentence report where required, and consider defendant's character and particular circumstances of offense in arriving at individual sentence, and <u>Commonwealth v. Wicks</u>, 401 A.2d 1223 (Pa. Super. 1979), in which Superior Court (continued…)

"immediately and detrimentally" affected its interests. Like the Majority, I agree. The Commonwealth Court held, and the Office of the Governor claims here, that the harm caused by the Donahue decision is a sufficient predicate for standing to file the original jurisdiction action but that the harm caused by the Donahue decision, in an apparent contradiction, was an insufficient basis to file an appeal. In my view, the perceived distinction is illusory, if not artificial; the same harm was enough to confer standing to appeal.

I recognize that the Commonwealth Court's "standing to appeal" holding was superficially colorable, even if the approach was self-contradictory of its "standing" reasoning relating to the declaratory judgment count, and so the Office of the Governor's concession regarding standing to appeal the OOR's Donahue decision perhaps is an understandable litigation strategy. Ultimately, the Office of the Governor

---

(…continued)

vacated sentence holding that sentencing "court's statements were insufficient because, in consequence of their brevity and conclusory quality, they do not manifest a consideration of the statutory guidelines for sentencing, nor otherwise explain the reasoning behind the sentences imposed"). I suspect that certain panels rendering such decisions were well aware of the bind they thus created. The tactical practice is as old as Marbury v. Madison, 1 Cranch 137 (1803), in which the U.S. Supreme Court established the crucial power of the judiciary to provide a remedy by suit where a legal right exists, although, ultimately, the Court declined to exercise the authority so recognized to grant relief to the plaintiffs before the Court -- thus avoiding a potential showdown with President Jefferson and the executive branch. In short, anyone with a modicum of practical appellate experience recognizes that the knee-jerk approach to "aggrievement" can cause substantial injustices. See, e.g., Commonwealth v. Robinson, 837 A.2d 1157, 1160-61 & n.7 (Pa. 2003) (noting that although Commonwealth had prevailed below because Superior Court denied post-conviction relief, Commonwealth was nevertheless aggrieved by Superior Court's decision to review merits of time-barred third serial petition for post-conviction relief premised upon theory that serial petition was extension of abandoned timely initial petition; harm was caused by substantial burden imposed on Commonwealth by requirement to brief merits of post-conviction claims attendant to Superior Court's approach to time bar).

[J-96-2013] [MO: Baer, J.] - 6

was permitted to pursue declaratory relief and the "standing to appeal" decision had little immediate practical effect.

But, for this Court, the considerations are distinct. While I agree that approving the correct interpretation of Section 901 is important, this Court also has a supervisory duty to consider the prudential implications of its own procedural decisions for the proper functioning of the judicial system. If the decision were before us, I for one would conclude that the Office of the Governor most certainly was aggrieved by the Donahue decision, an aggrievement that conferred standing for the Office of the Governor to appeal that decision to the Commonwealth Court pursuant to Rule 501. A case like this should be directly appealable to the Commonwealth Court, to discharge its important direct review function respecting such disputes, and leaving the Supreme Court to review the claims on the discretionary docket, via allocatur petition.

Given the ongoing difficulties with the RTKL and the OOR, and this Court's power to provide broad guidance, I note there are unintentional and deleterious consequences of the procedural concession by the Office of the Governor and the related suggestion that the Office of the Governor lacked a statutory remedy. First, the lower court decision seemingly sanctioned an agency decision to by-pass the administrative review process and to shortcut the procedure by filing an action in the original jurisdiction of the Commonwealth Court and obtaining review as of right in this Court. Second, the declaratory judgment action is a collateral attack on the administrative decision that would enable the parties to proceed upon a lower burden of proof than in an appeal from an OOR decision, and to avoid salutary prudential concerns such as preservation and presentation of issues. Finally, these procedural artifices place an unnecessary burden upon this Court's limited resources. The OOR's and the Commonwealth Court's miscues in interpreting the RTKL have already

generated a flurry of appeals that this Court has accepted on its discretionary docket. The lower court's approach in this matter has the potential effect of swinging the door open for litigants in OOR matters to file direct appeals of right to this Court. I have written extensively to these concerns in other matters and I will not reiterate those arguments here except by reference. See, e.g., Mercury Trucking, Inc. v. PUC, 55 A.3d 1056, 1076-79 (Pa. 2012); Bowling v. Office of Open Records, 75 A.3d 453, 478-80 (Pa. 2013) (Castille, C.J., dissenting).

The dispute between the parties relating to exhaustion of administrative remedies is a direct result of the arcane rules at play and the fact that the case did not proceed "cleanly" through the appeals process from the initial decision. Respectfully, in my view, it is beyond dispute that, as a general matter, the RTKL provides agencies (including the Office of the Governor) with a statutory remedy to challenge an adverse OOR decision. Any lack of remedy here would flow from the truncated notion of aggrievement I have described above, and thus is a result of the agency's interpretation of the Rules of Appellate Procedure and its subsequent concession regarding its ability to appeal the OOR decision. Even accepting the argument of the Office of the Governor that it lacked a remedy, the complaint would not be related to a "statutory" remedy but to a rule-based procedural impediment to appeal.

Nevertheless, I have little difficulty with the Majority's decision to reject the OOR's claim regarding the exhaustion of statutory remedies, in the context of this *sui generis* matter, notwithstanding the Office of the Governor's unnecessary (or perhaps strategic) decision to acquiesce in the Commonwealth's Court's holding on standing to appeal. The Court may and should reach the merits of the parties' dispute for prudential reasons. Resolution of the dispute on the merits unquestionably is important to the Office of the Governor and to all other agencies subject to the RTKL and the OOR. The

OOR decision in <u>Donahue</u> may affect numerous parties and agencies, not all of which may have an opportunity to challenge the decision before incurring harm. In this respect, the available statutory remedy is inadequate to vindicate the rights of the multitude of interested parties. In the meantime, the costs to the public purse accompanying agency efforts either to comply with the OOR's non-textual interpretation or to challenge the rule in every instance are unjustifiable. The OOR should consider more seriously, and fairly, these consequences when fashioning its seemingly shifting litigation stances.