2023 PA Super 29

| | | |
|---|---|---|
| MIA PRENSKY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TALEB M. TALAAT | : | |
| | : | |
| Appellant | : | No. 636 WDA 2022 |

Appeal from the Order Entered May 3, 2022
In the Court of Common Pleas of Butler County
Civil Division at No.  21-10286

BEFORE:  BOWES, J., MURRAY, J., and PELLEGRINI, J.[*]

OPINION BY MURRAY, J.:                    **FILED: FEBRUARY 27, 2023**

Taleb M. Talaat (Appellant) appeals from the order addressing his dispute with his neighbor, Appellee Mia Prensky (Ms. Prensky).  After careful consideration, we quash.

## BACKGROUND

The parties reside on adjoining land in Butler County.  On April 23, 2021, Ms. Prensky initiated the underlying action by filing a complaint and motion for preliminary injunction.  Ms. Prensky raised claims of "private nuisance and trespass and s[ought] ejectment and an injunction against [Appellant's] continual interference with [Ms. Prensky's] use and enjoyment of her property."  Motion for Preliminary Injunction, 4/23/21, at 2.

The parties' respective properties are in a "Rural Residential Zone," which "permits agricultural activities by right and agricultural activities are

_____

[*] Retired Senior Judge assigned to the Superior Court.

defined by the zoning ordinance to permit the raising of poultry and livestock." *Id.* Ms. Prensky "frequently adopts farm animals and poultry which were rescued from neglectful or abusive homes and provides them with a comfortable place to live at [her p]roperty." *Id.* The animals are contained "by a fence enclosure surrounding the barn and barnyard." *Id.* at 3. In addition, Ms. Prensky "has established a working, non-profit poultry farm." *Id.*

Ms. Prensky averred that Appellant "repeatedly expressed disdain" for Ms. Prensky's animals, permitted his dog to enter Ms. Prensky's property, and installed a "bird repeller" to "emit both sonic and ultrasonic sounds and strobe lights to startle birds and repel them from the area." *Id.* at 3-4. Ms. Prensky averred that Appellant placed the device at the edge of her property and aimed it "directly into her fenced in pasture." *Id.* at 4. As a result, the animals began displaying "signs of increased agitation and aggressive behavior." *Id.* A pig refused to leave the barn when the device was on. *Id.* at 5. Ms. Prensky also experienced distress, including an inability to sleep at night when the device was "at its maximum volume with the strobe light activated." *Id.* Prior to filing suit, Ms. Prensky consulted with her veterinarian and took measures to counteract the effect of the device without success. *Id.* Ms. Prensky averred that she and her animals suffered harm and lost the use and enjoyment of her property. *Id.* at 6. She requested the trial court restore the *status quo* and enter an order enjoining Appellant from interfering with her possession, use and quiet enjoyment of her property. *Id.* at 7.

The trial court conducted a "partial hearing" on May 11, 2021, and thereafter ordered that Appellant was "permanently enjoined from using an electric bird repelling device on his property … if such device is either A) placed within 30 feet of the property line [Appellant] shares with [Ms. Prensky] or B) facing in a westward direction."  Order, 5/19/21.

Two days later, on May 21, 2021, Appellant filed a new matter and counterclaims.  Ms. Prensky filed a reply.  The trial court explained:

> [Appellant] averred, *inter alia*, that [Ms. Prensky's] birds trespass on his property, and runoff is entering onto his property from [Ms. Prensky's] property, including therein animal urine and excrement.
>
> On or about September 14, 2021, [Appellant] filed a Petition for Preliminary Injunction, seeking a preliminary injunction against [Ms. Prensky], "in order to require Prensky to abate the constant intrusion and trespass of noise, smells, feces, and animals upon [Appellant's] property."  (Petition for Preliminary Injunction, introductory paragraph). **On December 28, 2021, at the time set for the hearing on the preliminary injunction, and prior to any testimony, the parties entered into the basic terms of an agreement, and entered an outline of these terms into the record**. (TRO, December 28, 2021 (docketed January 27, 2022)).  In pertinent part, [Ms. Prensky] stipulated that her poultry had trespassed on [Appellant's] property, that she has installed a poultry fence along the boundary of the parties' property to prevent further trespasses, and that she will maintain said fencing. [Ms. Prensky] agreed to continuously video monitor the property line, and upon learning of any of her birds trespassing onto [Appellant's] property, to immediately notify her counsel, who will, in turn, notify opposing counsel. [Ms. Prensky] agreed to save and review the video to determine how the birds escaped, and to provide same for [Appellant's] or his counsel's review; [Ms. Prensky] would then take action to prevent further, similar escapes.  [She] also stipulated that runoff from her property is entering onto [Appellant's] property, and that the runoff contains manure.  [Ms.

Prensky's] counsel confirmed that [Ms. Prensky] hired a certified manure management consultant, who developed a manure management plan for [Ms. Prensky] to implement in order to address the runoff issue. [Ms. Prensky] also agreed to develop a storm water management plan with the help of the manure management consultant, an agricultural construction consultant, and the Butler County Conservation District so as to divert the runoff away from [Appellant's] property. [Ms. Prensky's] counsel indicated that some portions of these plans could be implemented in the winter of 2021 to 2022; however, some portions could not be implemented until the spring of 2022. [Ms. Prensky] agreed to record and periodically report to the [trial c]ourt each step undertaken to further the above efforts.

**Following this discussion, the [c]ourt directed counsel for the parties to submit an agreed-upon Order of Court reflecting these terms. The parties eventually reached an impasse during the drafting of the Order of Court**. One of the main points of contention concerned [Ms. Prensky's] retrieval of her birds, should one or more escape the poultry fencing and trespass onto [Appellant's] property. [Appellant] refused to permit [Ms. Prensky] to retrieve any trespassing birds; [Ms. Prensky], on the other hand, wanted to ensure the safe return of her birds. **<u>Therefore, during an off-the-record telephonic Status Conference, counsel for the parties suggested that each party submit to the [c]ourt a proposed Order of Court, and, after presenting their respective proposed Orders, the [c]ourt would determine which Order to utilize as the consented-to Order of Court</u>. The [c]ourt agreed, and after submission of the proposed Orders, signed the May 3, 2022, Order of Court proposed by [Ms. Prensky**], which provided that, upon any trespass of her poultry, "Ms. Prensky will immediately retrieve the animal from [Appellant]'s Property." (May 3, 2022, Order of Court, [at] 8, 9). [Appellant], being dissatisfied [with the court's adoption of Ms. Prensky's proposed order], filed a Notice of Appeal on or about May 26, 2022.

Trial Court Opinion, 7/20/22, at 2-3 (bold and underline emphasis added).

The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement and Appellant complied. The trial court also canceled the June 22,

2022, status conference scheduled in the May 3, 2022, order. Order, 6/3/22, at 4.[1]

On July 13, 2022, this Court issued a rule to show cause directing Appellant to address "why the appeal should not be quashed or dismissed." Order, 7/13/22. We stated it "was unclear whether" the May 3, 2022, order was "final or otherwise appealable … because it was apparently entered by agreement of the parties." **Id.** (citing **McCutcheon v. Philadelphia Elec. Co.**, 788 A.2d 345, 349 (Pa. 2002) (providing appeal properly lies only from final order unless otherwise permitted by rule or statute)); Pa.R.A.P. 341(b)(1) (defining final order as disposing of all claims and parties); Pa.R.A.P. 311(a)(4) (permitting appeal as of right and without reference to Pa.R.A.P. 341(c) from an order "that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction . . ."); **Miller v. Miller**, 744 A.2d 778, 783 (Pa. Super. 1999) (where appellant acquiesced to orders, he cannot seek remediation of those orders), and **Karkaria v. Karkaria**, 592 A.2d 64, 71 (Pa. Super. 1991) (party who acquiesced to order or judgment may not later be heard to challenge it).

On July 22, 2022, Appellant filed a response arguing this appeal is proper pursuant to Pa.R.A.P. 311(a)(4) (permitting appeal as of right from an order granting or denying an injunction). Appellant also claimed he did not

---

[1] Appellant filed a motion to stay the May 3, 2022, order pending appeal. The trial court denied the motion "upon consideration of" Ms. Prensky's response and argument held on June 21, 2022. Order, 6/21/22.

- 5 -

agree to several provisions of the May 3, 2022, order. This Court discharged the rule but advised "the issue may be revisited … and the parties should be prepared to address, in their briefs or at the time of oral argument, any concerns the panel may have concerning this [appealability] issue." Order, 8/12/22.

Appellant filed his brief on September 16, 2022. He presents three questions for review:

> 1. Did the trial court err or abuse its discretion in entering the Court Order "by agreement of the parties to this action, in conformance with the agreements reached in Court on December 28, 2021," when: (1) the filings and oral argument in court on May 3, 2022, made clear that [Appellant] opposed and objected to the proposed order of court in the motion of appellee [Ms. Prensky]; (2) [Appellant] did not agree on December 28, 2021, or any time before or since that [Ms.] Prensky could enter upon [Appellant's] property to retrieve animals; and (3) [Appellant] did not agree on December 28, 2021, or any time before or since that [Ms.] Prensky could cause urine and excrement contaminated water and/or water runoff to flow onto [Appellant's] property?

> 2. Did the trial court err or abuse its discretion by entering the Court Order, which provided [Ms.] Prensky the right to enter onto [Appellant's] property to retrieve animals as set forth in paragraphs 8 and 9 of the Court Order: (1) when that deprives [Appellant] of the fundamental property right to exclude others from his private property; (2) when that relief was not sought by any party in this matter; (3) when that relief was not agreed upon by the parties to this action; (4) when that relief functionally grants [Ms.] Prensky a license to enter upon [Appellant's] property, when such a license was not relief sought by any party in this matter and/or agreed upon by the parties to this action; and (5) when that relief functionally enjoins [Appellant] from enforcing his property rights, when such an injunction was not relief sought by any party in this matter and/or agreed upon by the parties to this action?

- 6 -

3. Did the trial court err or abuse its discretion by entering the Court Order and authorizing [Ms.] Prensky to concentrate, direct, and discharge urine and excrement contaminated water onto [Appellant's] property, as set forth in paragraph 15 of the Court Order: (1) when that discharge is contrary to Pennsylvania law on surface waters and constitutes tortious and/or actionable behavior; (2) when that relief was not sought by any party in this matter; and (3) when that relief was not agreed upon by the parties to this action?

Appellant's Brief at 8-9.

## APPEALABILITY

We are compelled to consider the appealability of the May 3, 2022, order. "The question of the appealability of an order goes to the jurisdiction of the Court … review[ing] the order." **Beltran v. Piersody**, 748 A.2d 715, 717 (Pa. Super. 2000). "Jurisdiction is purely a question of law; the appellate standard of review is *de novo*, and the scope of review is plenary." **Commonwealth v. Merced**, 265 A.3d 786, 789 (Pa. Super. 2021).

In general, appellate courts only have jurisdiction over appeals from a final order. **Schmitt v. State Farm Mut. Auto. Ins. Co.**, 245 A.3d 678, 681 (Pa. Super. 2021). "A final order is one that disposes of all the parties and all the claims; or is entered as a final order pursuant to the trial court's determination under Rule 341(c). Pa.R.A.P. 341(b)(1), (3)." **Id.** However, an appeal may be taken from "an order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties." Pa.R.A.P. 311(a)(8). The Pennsylvania Supreme Court has stated,

- 7 -

courts avoid piecemeal review not only out of concern for judicial economy, but out of concern for judicial *accuracy*—because, as a general rule, an appellate court is more likely to decide a question correctly after judgment, where it may consider the claim in the context of a complete adjudication and a fully developed record.

***Rae v. Pennsylvania Funeral Directors Ass'n***, 977 A.2d 1121, 1130 (Pa. 2009) (italics in original, citations omitted).

Instantly, the trial court "submits that [Appellant's] appeal of the May 3, 2022, Order of Court is improper and not subject to review." Trial Court Opinion, 7/20/22, at 6. The trial court "believes [Appellant's] appeal is an improper appeal from a consent Order of Court." *Id.* at 4. The trial court emphasizes that the parties entered into an agreement "in lieu of a hearing on [Appellant's] request for a preliminary injunction." *Id.*

Appellant does not address appealability in his brief. In his response to this Court's rule to show cause, Appellant argued the May 3, 2022, order "was appealable as of right under Pa.R.A.P. 311(a)(4) because it entered an injunction." Response, 7/22/22, at 1. Appellant asserted "the genesis of the Order was [Appellant's] Petition for Preliminary Injunction. Moreover, the Order has the effect of an injunction." *Id.* Appellant further claimed he "did not agree to multiple terms in the Order, which means that the trial court erred in entering it as an order 'by agreement of the parties.'" *Id.* at 3.

Like the trial court, Ms. Prensky contends the order "is a consent order which is not appealable and not properly before this Court." Appellee's Brief at 14. Ms. Prensky relies on case law which defines a consent order as "an

agreement by the parties, sanctioned by the court, rather than a judgment."

*Id.* at 11 (citing *Laird v. Clearfield & Mahoning Ry. Co.*, 916 A.2d 1091

(Pa. 2007), and *Velocity Magnetics, Inc. v. Marzano*, 421 WDA 2022 (Pa.

Super. Oct. 7, 2022) (unpublished memorandum[2])).   An appeal from a

consent order is permitted only if (1) the consent order explicitly permits it,

or (2) the record reveals the parties anticipated appeal.   *See Laird, supra*

(permitting appeal after entry of stipulated order where transcript revealed

appellants' desire to preserve appeal).   Ms. Prensky stresses the May 3, 2022,

order is not appealable because it does not contain any provision anticipating

an appeal.   Appellee's Brief at 12.

The content of the May 3, 2022, order informs our disposition.   The

order states:

> AND NOW, this 3rd day of May, 2002, the following order is being entered in the above captioned matter, **by agreement of the parties to this action**, in conformance with the agreements reached in [c]ourt on December 28, 2021, before the undersigned, **for which a transcript entitled "Terms of Agreement" exists memorializing these agreements.   A copy of the Terms of Agreement is attached hereto as Exhibit A**.

> <u>Trespass of Animals</u>

> 1.    It is stipulated to by Ms. Prensky that her animals have trespassed onto [Appellant's] property with the last known trespass of animals having occurred on October 18, 2021.

---

[2] Non-precedential Superior Court decisions may be cited as persuasive authority pursuant to Pa.R.A.P. 126(b)(2).

2.  It is stipulated to by Ms. Prensky that as a result of her animals trespassing onto [Appellant's] property, she has installed a 4-foot high netted poultry fencing above the existing wooden fencing along the property line between her property and [Appellant's] property, to prevent the trespass of animals from Ms. Prensky's property onto [Appellant's] property.

3.  It is hereby ORDERED that Ms. Prensky will extend the 4-foot high netted poultry fencing, as it existed on December 28, 2021, to extend to the front of her property so that the 4-foot high netted poultry fencing exists over the entire shared property line between her property and [Appellant's] property.

4.  It is hereby ORDERED that so long as Ms. Prensky maintains poultry, or any kind of animals that can fly, Ms. Prensky will maintain at least a 4-foot netted poultry fencing about the existing wooden fencing along the entire shared property line between her property and [Appellant's] property.

5.  It is stipulated to by Ms. Prensky that Ms. Prensky has installed and is currently using sixteen (16) video surveillance cameras that continuously record activity occurring around the shared property line between her and [Appellant's] properties.

6.  It is hereby ORDERED that, **for as long as this litigation is ongoing or until further order of this [c]ourt, whichever occurs first**, Ms. Prensky will maintain the sixteen (16) video surveillance cameras.

7.  It is hereby ORDERED that, **for as long as this litigation is ongoing or until further order of this [c]ourt**, whichever occurs first, Ms. Prensky will focus a camera on her rear property line that would be able to detect any of her animals that could escape her property and trespass onto [Appellant's] property.

8.  It is hereby ORDERED that in the event [Appellant] witnesses and/or becomes aware of a perceived trespass of animal(s) from Ms. Prensky's property, [Appellant] will notify Ms. Prensky, within a

- 10 -

reasonable period of time, and that, upon this notification, Ms. Prensky will immediately retrieve the animal from [Appellant's] property.

9. It is hereby ORDERED that in the event that Ms. Prensky witnesses and/or becomes aware of a perceived trespass of animal(s) from Ms. Prensky's property onto [Appellant's] property, Ms. Prensky will notify [Appellant], within a reasonable time, and that, upon this notification, Ms. Prensky will immediately retrieve the animal from [Appellant's] property.

10. It is hereby ORDERED that if Ms. Prensky witnesses and/or becomes aware of a perceived trespass, or if [Appellant] witnesses and/or becomes aware of a perceived trespass and notifies Ms. Prensky of the same, provided the notification is timely made, Ms. Prensky will review the video surveillance from her cameras to determine if animal(s) escaped from her property onto [Appellant's] property and if an animal(s) did escape from Ms. Prensky's property, she will take immediate measures to prevent any such escape from occurring in the future.

11. It is hereby ORDERED that in the event that Ms. Prensky's video surveillance cameras capture video of her animals escaping from her property onto [Appellant's] property, Ms. Prensky shall preserve this video surveillance footage.

12. It is hereby ORDERED that Ms. Prensky shall take all reasonable efforts necessary to prevent any further trespass of her animals onto [Appellant's] property.

Runoff of Water and Animal Excrement

13. It is stipulated to by Ms. Prensky that water runoff originating from her property has flowed onto [Appellant's] property.

14. It is stipulated to by Ms. Prensky that unknown quantities of animal excrement [are] contained in the

water runoff that is originating from her property and flowing onto [Appellant's] property.

15. It is hereby ORDERED that <u>Ms. Prensky shall immediately develop and implement a Storm Water Management Plan designed to divert water runoff *from* Ms. Prensky's property *onto* [Appellant's] property</u>.[3]

16. It is hereby ORDERED that Ms. Prensky shall immediately take reasonable measures to implement the Manure Management Plan that was developed with the assistance of Donna Zang.

_____

[3] The trial court points out the "very obvious typographical error" in this paragraph. *See* Trial Court Opinion, 7/20/22, at 8 (stating "All parties and the [trial c]ourt are keenly aware of the steps [Ms. Prensky] has taken and is taking to prevent any further runoff from escaping her property and entering [Appellant]'s property."). The trial court explained:

[Ms. Prensky] hired both a manure management consultant and an agricultural engineer, and is in contact with the Butler County Conservation District in order to develop and implement a plan to prevent this runoff. [Her] efforts in this regard have been discussed repeatedly and thoroughly between the parties and the [trial c]ourt, and [Appellant]'s and his counsel's use of this typographical error to suggest this [c]ourt is presently Ordering [Ms. Prensky] to divert runoff and manure onto [Appellant]'s property is specious, disingenuous, and is being proffered by defense counsel with the knowledge that no good faith basis exists for such an assertion. Although [Appellant] did not request that the [trial c]ourt modify or amend the … Order of Court to correct this error, the [trial c]ourt will, of course, take any steps necessary to rectify said typographical error.

*Id.* at 8-9. At oral argument, Ms. Prensky's counsel expressed her agreement with the trial court; she previously stated that athe trial court "has committed to rectifying the error." *See* Appellee's Brief at 9. This Court is likewise in agreement with the trial court's correction of the typographical error following our disposition and transmittal of the certified record to the trial court.

17. It is understood by [Appellant], from representations made by Ms. Prensky, that certain elements of the Storm Water Management Plan to be developed and/or the Manure Management Plan may not be able to be implemented until the Spring of 2022.

18. It is hereby ORDERED that Ms. Prensky shall document each and every effort, action and/or step she is taking to conform to her obligations and agreements set forth in this Order under the heading "Runoff of Water and Animal Excrement" until such time that the Storm Water Management Plan and the Manure Management Plan are fully implemented.

19. [Appellant] and Ms. Prensky reserve their rights to appear before this Court to seek enforcement and/or medication [*sic*] of this Order, and/or any additional relief.

20. **This [c]ourt will retain jurisdiction over this matter during the pendency of this litigation or until such time as a final order is entered**.

   Counsel for the parties to the within matter shall appear before this [c]ourt on the 22nd of June, 2022, at 1:00 PM for a Status Conference in this matter. Within ten (10) days prior to this status conference, Ms. Prensky shall file a status report with this [c]ourt, setting forth all actions she has undertaken to comply with this ORDER.

                                                  BY THE COURT

Order, 5/3/22, at 1-4 (emphasis and footnote added).


## LEGAL ANALYSIS

The May 3, 2022, order contains language which indicates it was not intended to be final. In addition to scheduling a status conference, the order references "ongoing litigation," "further order of court," and provides that the

trial court "will retain jurisdiction over this matter during the pendency of this litigation or until such time as a final order is entered." Order, 5/3/22, at 2, 4. As stated above, Appellant claims his appeal is proper pursuant to Pa.R.A.P. 311(a)(4) (appeal may be taken as of right from an order "that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction …").

Appellant filed a petition for a preliminary injunction on September 14, 2021. While a party may appeal from an order involving an injunction under Pa.R.A.P. 311(a)(4), the record belies Appellant's claim that the May 3, 2022, order "entered an injunction." Response, 7/22/22, at 1. To the contrary, the record supports the trial court's statement that the parties entered an agreement "in lieu of a hearing on [Appellant's] request for a preliminary injunction." Trial Court Opinion, 7/20/22, at 4.

We have explained:

the law of this Commonwealth requires that a petitioner seeking a preliminary injunction must establish every one of the following prerequisites:

First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Second, the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings. Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must

- 14 -

show that it is likely to prevail on the merits. Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity. Sixth, and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

***Overland Enter., Inc. v. Gladstone Partners, LP***, 950 A.2d 1015, 1020 (Pa. Super. 2008) (citation omitted).

In this case, there was no hearing or trial. ***See*** Trial Court Opinion, 7/20/22, at 2 ("at the time set for the [December 28, 2021] hearing on the preliminary injunction, and prior to any testimony, the parties entered into the basic terms of an agreement, and entered an outline of these terms on the record." (citation omitted)). Appellant never presented evidence regarding the six prerequisites for a preliminary objection. ***See Overland Enter., Inc., supra***. Thus, Rule 311(a)(4) is not applicable because the record does not support Appellant's claim that the May 3, 2022, order entered an injunction.

Appellant also argues the trial court "erred or abused its discretion by entering a 'consent' order that was not in fact consented to." Appellant's Brief at 20; ***see also*** Appellant's Reply Brief at 1-12. Appellant claims his appeal is proper because he was not in agreement with the trial court entering the May 3, 2022, order. ***See*** Response, 7/22/22, at 3. Both the trial court and Ms. Prensky argue the order is not appealable because it was entered upon consent of the parties. ***See*** Trial Court Opinion, 7/20/22, at 3-4; Appellee's Brief at 10-14.

It is well-settled that "a party who consents to, or acquiesces in, a judgment or order cannot appeal therefrom." ***Brown v. Commonwealth, Dep't of Health***, 434 A.2d 1179, 1181 (Pa. 1981) (citation omitted); ***see also Karkaria***, 592 A.2d at 71 (a party "who has acquiesced in an order or judgment will not later be heard to challenge it" (citation omitted)).

Appellant concedes:

> The parties appeared before the trial court on December 28, 2021, for the scheduled hearing on [Appellant's] petition for a preliminary injunction. Prior to the commencement of the scheduled hearing—and in lieu of the hearing—the parties reached an agreement as to certain specific stipulations for resolving their dispute, and the parties used the scheduled hearing as an opportunity to recite and memorialize the terms of their agreement on the record before the court.

Appellant's Brief at 14.

Appellant agrees he and Ms. Prensky "testified under oath that they would sign a consent order incorporating those terms." ***Id.*** He states that when "the parties exchanged drafts … they reached an impasse as to the contents of the stipulated order." ***Id.*** at 15. Appellant confirms that because they were "unable to agree, the parties each submitted motions proposing alternative orders to the trial court, that would capture the stipulations that were placed on the record on December 28, 2021." ***Id.*** Notably, Appellant does not address the trial court's statement that

> during an off-the-record telephonic Status Conference, **counsel for the parties suggested** that each party submit to the [c]ourt a proposed Order of Court, and, after presenting their respective proposed Orders, the [c]ourt would

- 16 -

> **determine which Order to utilize as the consented-to Order of Court**. The [c]ourt agreed ….

Trial Court Opinion, 7/20/22, at 3 (bold and underline emphasis added).

Ms. Prensky also states, "[**Appellant's] counsel** proposed that the parties file cross-motions presenting their proposed orders to the [t]rial [c]ourt for decision." *See* Appellee's Brief at 6 (citing R. 298a (Appellant's Motion to Approve Proposed Order Following Proceedings on December 28, 2021, at 2 (Appellant averring, "Upon recognizing that a few key terms could not be agreed upon, counsel participated in a status conference with the [c]ourt on March 16, 2022, in which counsel presented issues of concern."; "Upon recognizing that the parties were at an irreconcilable impasse, counsel agreed to prepare opposing motions seeking approval of the orders sought to be entered by either side")) and Appellant's Brief, Exhibit B-4 (Trial Court Opinion at 4)).

Critically, Appellant does not refute the trial court's statement that at the March 16, 2022 status conference, **counsel** suggested the parties submit proposed orders for the court's disposition. Likewise, Appellant does not deny Ms. Prensky's statement that "[Appellant's] counsel proposed that the parties file cross-motions presenting their proposed orders to the [t]rial [c]ourt for decision." Appellee's Brief at 6. Although Appellant acknowledged the March 16, 2022, status conference in his "Motion to Approve Proposed Order Following Proceedings on December 28, 2021," before the trial court, he does not mention the March 16, 2022, status conference in his brief. *See*

Appellant's Brief (Statement of the Case) at 14-15 (recounting "the parties'

appearance on December 28, 2021, for the scheduled hearing," where "in lieu

of the hearing … the parties reached an agreement …" followed by Appellant's

discussion of the parties submitting proposed "alternative orders … presented

to the trial court on May 3, 2022."). Appellant claims Ms. Prensky "does not

cite anything in the record showing [Appellant] ever agreed that the trial court

could insert additional terms into the parties' settlement agreement or

otherwise vary the parties' agreement." Appellant's Reply Brief at 4.

However, Appellant does not refute or address the statements of the trial court

and Ms. Prensky that **counsel suggested** the trial court resolve the parties'

dispute concerning Ms. Prensky's retrieval of birds from Appellant's property.

According to the trial court, the March 16, 2022, status conference

occurred "during an off-the-record[,] telephonic" exchange. Trial Court

Opinion, 7/20/22, at 3. Prior to the status conference, Appellant's counsel

stated — on the record — that the parties had reached an agreement, and "**if

there is any ambiguity, certainly we have the record that creates sort

of the context to interpret whatever we go into**." N.T., 12/28/21, at 2-

3 (emphasis added). Counsel made this comment during the following

discussion:

> THE COURT: It is my understanding that the parties have reached, through their Counsel, have reached an agreement in this matter … the general terms of which will be taken by Counsel back and formed, placed into an Order of Court that both Counsel will agree to and then I will sign that Order.

So this is, I think what we are doing here at this point in time is just a general outlining of what the order will contain. Is that correct Counsel?

[MS. PRENSKY'S COUNSEL]: Yes, Your Honor, so long as it's on the record that it's going to be consistent with what we discussed here today on the transcript.

THE COURT: What subsequently follows.

[APPELLANT'S COUNSEL]: Yes. That was also in our thought, **if there is any ambiguity, certainly we have the record that creates sort of the context to interpret whatever we go into**.

N.T., 12/28/21, at 2-3 (emphasis added). The parties then affirmed the terms their agreement under oath on the record. *Id.* at 3-15. The proceedings concluded with the trial court stating, "Thank you very much. Get me the Agreement, I will sign it, have the terms of the Agreement made an Order of Court and go from there. Thank you." *Id.* at 16.

Thereafter, the parties could not resolve the details concerning Ms. Prensky's retrieval of her birds in the event they escaped onto Appellant's property.[4] The impasse led to the parties' preparation and submission of proposed orders to the trial court. Again, the trial court recounted the parties agreeing at an off-the-record status conference that the trial court would "determine which Order to utilize as the consented-to Order of Court." Trial Court Opinion, 7/20/22, at 3. The trial court's statement is supported by Ms.

---

[4] Appellant refused to permit Ms. Prensky to retrieve her birds from his property, while Ms. Prensky "wanted to ensure the safe return of her birds." Trial Court Opinion, 7/20/22, at 3.

Prensky's April 22, 2022, motion to approve proposed order, in which, *inter alia*, she averred:

> **Upon recognizing that a few key terms could not be agreed upon, counsel participated in a status conference with the [trial c]ourt on March 16, 2022**, in which counsel presented the issues of concern [and] the court provided direction.
>
> Immediately following the conference, [Ms. Prensky's counsel] made changes to the proposed order to reflect the [c]ourt's direction and forwarded the same to [Appellant's counsel] for approval by his client.
>
> [Appellant's counsel], after some time, informed [Ms. Prensky's counsel] that his client simply would not agree to allow [Ms.] Prensky to retrieve trespassing animals who crossed over the fence but were still on the strip of property belonging to [Ms.] Prensky.

Motion to Approve Proposed Order Following Proceedings on December 28, 2021, 4/22/22, at 2, ¶¶ 6-8 (emphasis added).

When the parties appeared before the trial court on May 3, 2022 to advocate for their respective proposed orders, Appellant's counsel stated:

> **When we appeared on the 28th of December, it was to bring finality to this.  We believe that we did.  We believe the terms of the agreement that were put on the record before Your Honor did**.  **It spoke to the water runoff, it spoke to the excrement run off, <u>and it spoke to the trespass</u>.  It was only after we left here, Your Honor, that there was this new concept** of—
>
> THE COURT:  **<u>And we addressed that on the telephone, on the conference call</u>.**
>
> [APPELLANT'S COUNSEL]:  The concept of, not the notification, it's the concept that a request through Your Honor, which we would oppose and object to any order that would say that Ms.

Prensky, if she's either notified or if she sees an animal, that it gives her the right to come on the property. That goes beyond any sort of relief that was sought in this case.

THE COURT:        How do you expect her to get this animal back if it goes on his property and he calls her and says, come and get your – your animal's on my property. What are we supposed to do?

[APPELLANT'S COUNSEL]:        We expect her animals not to come on our property.

THE COURT:        Well in an ideal world, so do I. But we don't live in an ideal world. We live in a realistic world.

[MS. PRENSKY'S COUNSEL]: And if I may address that point, Your Honor, my client adamantly does not want the animals on –

THE COURT:        I understand that.

N.T., 5/3/22, at 4-5.

The trial court added that the parties should cooperate and use "common courtesy." *Id.* at 6. Appellant's counsel reiterated that although the parties appeared before the court on December 28, 2021, the parties "still don't have an order … Here we are now in May[.]" *Id.* The trial court replied that "the plans are supposed to go forward." *Id.* The court advised it would "sign an order to that effect," *id.*, and entered the May 3, 2022, order.

As noted, the trial court views Appellant's appeal from the order as "an improper appeal from a consent Order of Court." Trial Court Opinion, 7/20/22, at 4. The court reasoned:

[I]n lieu of a hearing on [Appellant's] request for a preliminary injunction, the parties entered into an agreement. The parties outlined the terms of the agreement on the record, with the intent to reduce the agreement to writing in a consent Order of Court. The parties began negotiations, and agreed upon the majority of

- 21 -

the terms, but … reached an impasse with regard to [Ms. Prensky's] retrieval of her birds should a trespass occur. **Instead of requesting the [c]ourt to hold a hearing on this matter, the parties each agreed to submit a proposed Order of Court to the undersigned, to present these proposed Orders to the [c]ourt, and to leave the decision to the [c]ourt as to which Order of Court would be adopted as the consent Order**. Each of the proposed Orders of Court included the phrase, ". . . the following Order is being entered in the above captioned matter, by agreement of the parties to this action. . . ." Neither of the parties objected to the inclusion of said language at any time during these proceedings. As such, the [c]ourt considers the May 3, 2022, Order of Court to be a consent Order of Court.

In **Laird v. Clearfield & Mahoning Ry. Co.**, 916 A.2d 1091, 1094 (Pa. 2007), the parties entered into a stipulated Order in lieu of trial, whereby the Defendant stipulated to having breached the parties' contract, but preserved "the right to raise this issue again should, following appellate review, further trial be necessary." (**Id.** at 1093). From this language in the Order, as well as the parties' discussions with the [c]ourt, it was clear that all parties and the [c]ourt recognized that the Defendant intended to appeal certain pre-trial rulings, and that, if successful on appeal, the Defendant would be afforded the opportunity to relitigate the breach of contract claim. As expected, following the entry of the stipulated Order, the Defendant appealed a number of the [c]ourt's pre-trial rulings that dismissed certain claims and defendants. The Superior Court *sua sponte* held that the stipulated agreement amounted to a consent decree, and, as consent decrees are not reviewable on appeal, dismissed the Defendant's appeal. The Pennsylvania Supreme Court granted review to determine whether the stipulated order constituted such a consent decree. In its final holding, the Court agreed with the dissent that consent decrees are not reviewable on appeal. However, the Court declined to make a determination as to whether the Order before it constituted such a consent decree, concluding the record did not provide sufficient factual information to make such an assumption. Instead, the Court ruled that "where, as here, (1) the trial court's order is entered in lieu of trial pursuant to a stipulated agreement **which contemplates appellate review**, and (2) the issue being appealed is not disposed of in the stipulated order, appellate review is not precluded." **Id.** at 1094.

Presently, for the reasons stated above, the [c]ourt views the May 3, 2022, Order of Court as a consent Order of Court, being as such, any appellate review is precluded. However, **even if the May 3, 2022, Order of Court is not a consent Order of Court, [Appellant] yet fails to satisfy the requirements of** *Laird*. The May 3, 2022, Order of Court was entered in lieu of a hearing. Neither of the parties preserved the right to appeal the May 3, 2022, Order of Court, nor was appellate review discussed at any time during these proceedings. Consequently, [Appellant] has failed to satisfy the first prong of the *Laird* rule. Additionally, the issue being appealed from is disposed of in the May 3, 2022, Order of Court, as it is the May 3, 2022, Order of Court itself from which the appeal is being taken. Thus, [Appellant] has failed to satisfy the second prong of the *Laird* rule. As such, the [c]ourt respectfully submits that [Appellant's] appeal of the May 3, 2022, Order of Court is improper and not subject to review.

Trial Court Opinion, 7/20/22, at 4-6 (underlining in original, bold emphasis added, footnotes omitted).

Consistent with the trial court's reasoning and our review of the record and prevailing law, we conclude the May 3, 2022, order is not appealable. Accordingly, we quash the appeal.

Appeal quashed. Jurisdiction relinquished.[5]

---

[5] As discussed above, the trial court's correction of the typographical error in ¶15 of the order is proper following this Court's disposition and transmittal of the certified record to the Butler County Court of Common Pleas.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  2/27/2023