IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania　　　　:
Game Commission　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　v.　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
Lamont Kapec,　　　　　　　　　　　:　　No. 1185 C.D. 2022
　　　　　　　　　Appellant　　　　　:　　Argued: September 11, 2023


BEFORE:　　HONORABLE CHRISTINE FIZZANO CANNON, Judge
　　　　　　HONORABLE STACY WALLACE, Judge
　　　　　　HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION
BY JUDGE FIZZANO CANNON　　　　　FILED: October 16, 2023


　　　　　Lamont Kapec (Kapec) appeals from an order of the Court of Common Pleas of the 44th Judicial District, Sullivan County Branch – Civil Division (trial court) dated September 16, 2022. This is a quiet title action in which the trial court ordered the recording of a confirmatory deed proposed by the Pennsylvania Game Commission (Game Commission) allowing the Game Commission and the public to have access over a private road that crosses Kapec's land. Upon review, we vacate the trial court's order and remand this matter to the trial court for further proceedings.


**I. Background**

　　　　　Kapec acquired the land in question (Kapec's Land or the Land) in 2011. Reproduced Record (RR) at 8a-9a. However, members of Kapec's family

have owned the land for several generations. The land currently abuts a large tract owned by the Game Commission (Tract 13).

Earlier predecessors in title of Kapec's Land included the Central Pennsylvania Lumber Company (CPLC), which later transferred the Land to the Elk Tanning Company (Elk Tanning). RR at 10a. CPLC's deed to Elk Tanning reserved to CPLC, its successors and assigns, "the right of ingress, egress, and regress through over and across [Kapec's L]and from other lands of [CPLC, including what is now Tract 13] to the public road leading to Jamison City." RR at 11a. In its complaint to quiet title, the Game Commission asserted that the referenced "public road leading to Jamison City" is the road at issue here, which crosses Kapec's Land. *Id.* Thus, in its complaint, the Game Commission referred to the road across Kapec's Land as a "public road." *See, e.g.*, *id.* at 11a-12a. The Game Commission asserted that the road at issue has been used since 1916 and was described as a "public road" in a deed attached to the complaint. *Id.* at 12a.

Kapec denied that any portion of Jamison City Road runs through his land. RR at 56a. He averred that the deeds attached to the Game Commission's complaint referring to public roads were not referring to his private road. *Id.* at 57a. Thus, he denied that the deed's reference to a "public road leading to Jamison City" related to the private road across his land. *Id.* at 58a. He posited that the public road referenced in the deed on which the Game Commission relied is the public road from Long Pond, now known as Ganoga Lake, to Jamison City. *Id.* at 67a. Kapec contended that the referenced road was formerly known as Corcoran Road and is now Sullivan Falls Road. *Id.* at 67a-68a. Kapec further averred that the private road on the Land has never run to Long Pond (Ganoga Lake). *Id.*

2

The Game Commission did not seek to have the road declared a public road as such, but rather, requested judgment in its favor declaring that it "[h]as [a] right to an easement in the use of the [s]ubject [p]roperty as a road to ingress, egress, and regress" over Kapec's Land and enjoining Kapec "from infringing on the enjoyment of that easement." RR at 13a. The Game Commission maintained that its use of the road, and that of the public, has been "open, visible, permanent, and continuous" since 1916. *Id.* at 12a. The Game Commission posited that it also enjoys an easement by implication because the parties to the deed from CPLC to Elk Tanning intended for CPLC's successors and assigns, which now include the Game Commission, to retain use of the road. *Id.*

In his new matter and counterclaim to the complaint, Kapec rejoined that the road allegedly used since 1916 was not on the Land. RR at 59a. According to Kapec, that road became unusable when a flood washed a bridge away in the 1970s; thereafter, the Game Commission obtained permission from Kapec's family members who owned what is now the Land to use what had formerly been a railroad bed to access the portion of Tract 13 adjacent to Kapec's Land. *Id.* He averred that the railroad bed had been privately used to access a factory and had never been a public road. *Id.* at 67a. Kapec insisted that the Game Commission never obtained an easement, by implication or otherwise, to cross the Land. *Id.* at 59a. He admitted that he allowed the Game Commission to use his private road to access Tract 13, but he claimed he did not agree to allow the public to use his road. *Id.* at 66a. Kapec alleged that members of the public are using and abusing the road, making noise at all hours, leaving trash on his property, engaging in criminal activities, and exposing him to potential liability if they are injured on the Land. *Id.* at 66a & 215a-16a.

3

In response to Kapec's counterclaim, the Game Commission acknowledged that Kapec and his family members who preceded him in title have disputed the right of access over the road by third parties, including licensed hunters and fur takers, for more than 30 years. RR at 103a-04a. Notwithstanding its pleading of an easement reserved in a prior deed, the Game Commission also reasserted that it enjoys an easement reserved by implication that is "separate and distinct" from the alleged reservation in the deed. *Id.* at 105a-06a.

No hearing or trial was held in this matter. Instead, apparently after some negotiations between the parties, Kapec filed a motion for entry of a consent judgment. In the motion, Kapec stated that to avoid the expenses of continuing the litigation, he was willing to consent to "an easement in favor of the [Game Commission], and only the [Game Commission] . . . ." RR at 114a. Kapec attached a proposed order to the motion. *Id.* at 115a-16.

The Game Commission's response to the motion for consent judgment did not clearly indicate agreement. The Game Commission still asked for judgment in its favor and averred that its easement always included all lawful users of Tract 13. RR at 119a-20a. The Game Commission posited that no confirmatory deed was required. *Id.* at 120a. Notably, however, the Game Commission's proposed order attached to its response related only to its own use of the purported easement and said nothing about other lawful users of Tract 13. *Id.* at 122a.

The trial court granted Kapec's motion and entered an order in April 2022 directing the parties to record an agreed confirmatory deed within 30 days. RR at 125a-26a; *see also id.* at 205a. However, the parties were unable to agree on the terms of the confirmatory deed. *See, e.g., id.* at 146a-50a (Kapec's proposed confirmatory deed with tracked changes showing his purported offers of edits that

4

were not accepted by the Game Commission).  Accordingly, both sides filed proposed confirmatory deeds and supporting briefs with the trial court.  *See id.* at 206a.

In September 2022, the trial court held a transcribed status conference at which the parties reasserted their competing positions.  RR at 204a-26a.  In addition, the Game Commission's counsel expressed the Game Commission's willingness to consider providing enhanced enforcement of its regulations by users of the road, but he stated that issue was beyond the scope of the quiet title action.  *Id.* at 212a-13a.  Kapec's counsel opined that such enhanced enforcement would essentially require 24-hour monitoring by the Game Commission, which itself would interfere with Kapec's quiet enjoyment of his property.  *Id.* at 210a.

Kapec's counsel purportedly brought videos demonstrating how loud users of the road were, and the Game Commission brought a witness and some exhibits; however, the trial court refused to accept evidence at a status conference.[1]  RR at 215a-17a.  On September 16, 2022, the trial court issued an order for the recording of the Game Commission's proposed confirmatory deed.  *Id.* at 230a-35a; *see also id.* at 236a-38a.  Kapec timely appealed.

On November 29, 2022, the trial court issued an opinion in support of its order.  RR at 236a-42a.  Notably, the trial court's opinion stated as established facts a number of material facts that were actually hotly disputed – including the origin of the Game Commission's right to use the road at issue and whether that road is in fact the one described in prior deeds – notwithstanding that no factual hearing

---

[1] However, the trial judge indicated his intent to "do a site view" following the status conference, to which neither party objected.  RR at 223a & 225a.  The record does not indicate whether a site view actually occurred; nor did the trial judge indicate what information he hoped to obtain through a site view.

5

had ever been held, no evidence had ever been presented by either side, and the parties did not stipulate to those facts. *See id.*

## II. Issues

Kapec contends that the trial court erred by granting unlimited access to the road by the public at large, which Kapec insists is relief the Game Commission never requested in its complaint and is not supported by the record. He also argues that the trial court erred by extending the easement to anyone with a hunting license, which he claims will allow potential access by upwards of a million people annually. Further, Kapec maintains that the trial court erred in that, by accepting the Game Commission's proposed confirmatory deed, the trial court has improperly prevented Kapec from erecting a moveable gate on his own private property to limit unauthorized access to the road.

Before we may reach any of these issues, however, the procedure in the trial court raises a preliminary jurisdictional issue, which we address first because it is potentially dispositive.

## III. Discussion
### A. Appealability and Jurisdiction

Although not raised by the parties, a preliminary issue must be addressed concerning the propriety of this appeal and this Court's jurisdiction to entertain it. Even where the parties have not raised the issue of jurisdiction, "subject matter jurisdiction is not waivable and may be raised at any stage of a proceeding *sua sponte* by the Court." *Kalmeyer v. Mun. of Penn Hills*, 197 A.3d 1275, 1279 (Pa. Cmwlth. 2018) (first citing *Blackwell v. State Ethics Comm'n*, 567 A.2d 630,

6

636 (Pa. 1989); and then citing *Ness v. York Twp. Bd. of Comm'rs & York Cnty. Comm'rs*, 123 A.3d 1166, 1169 n.2 (Pa. Cmwlth. 2015)).

As a general rule, orders entered by consent of the parties are not appealable. *Laird v. Clearfield & Mahoning Ry.*, 916 A.2d 1091, 1097 (Pa. 2007) (quoting *Brown v. Pa. Dep't of Health*, 434 A.2d 1179, 1181 (Pa. 1981) (holding that, "[o]rdinarily, a party who consents to, or acquiesces in, a judgment or order cannot appeal therefrom") (additional quotation marks omitted)). The first issue in this appeal, therefore, is whether the trial court's order constituted a consent order even though the parties did not fully agree on all terms but, rather, submitted briefs and competing proposed orders to the trial court.

The Superior Court's recent disposition of the property dispute in *Prensky v. Talaat*, 291 A.3d 25 (Pa. Super. 2023) involved analogous circumstances that merit discussion here. In *Prensky*, two adjacent landowners brought claims of nuisance and/or trespass against each other. One owner, Prensky, claimed her neighbor, Talaat, was disturbing her and her farm animals by using motion-activated alarms aimed at her property and allowing his dog to run on her property; in turn, Talaat alleged that Prensky's animals were habitually encroaching on his property and that storm runoff from Prensky's property contained animal waste. *Id.* at 26-27. The parties reached an agreement in principle to resolve their mutual claims, and the court directed them to file a joint consent order. *Id.* at 27-28. Like the parties here, however, Prensky and Talaat were unable to agree on the specific terms of a consent order, so they submitted competing proposed orders to the court for disposition. *Id.* at 28 & 34-35. The court entered the order proposed by Prensky, and Talaat appealed. The Superior Court, however, found it lacked jurisdiction and quashed the appeal. The Superior Court ultimately agreed with the lower court's analysis

7

and its conclusion that the choice between two competing proposed consent orders still constituted a consent order, which was not appealable under *Laird*. *Id.* at 38.

Here, as in *Prensky*, the parties agreed generally on a pretrial resolution of their dispute, and the trial court directed them to submit a consent order. However, they were unable to agree on some specific key terms. As in *Prensky*, the parties submitted competing draft consent orders to the trial court. After briefing and argument, the trial court, with the parties' prior consent, chose between the competing consent orders. The trial court entered the order submitted by the Game Commission. That order included some specific terms to which Kapec had refused to agree.

Although not binding on this Court, Superior Court decisions may offer persuasive precedent where they address analogous issues. *See Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018). However, although the circumstances in *Prensky* bear some resemblance to those in this case, they are distinguishable.[2] Here, the record indicates the parties never agreed on a fundamental term of the consent order, the extent of the Game Commission's easement. Kapec's motion for entry of the consent order expressly stated that he was agreeing that the Game Commission, *and only the Game Commission*, would have use of the private road. RR at 114a. The Game Commission, however, insists it never agreed to a limitation that would prevent licensed hunters and others lawfully entering state game lands from using the private road, and indeed, its response to Kapec's motion specifically averred that its easement always included all lawful users of Tract 13. *Id.* at 119a-20a. Thus, the competing consent orders related not merely to details of the parties' agreement, but

---

[2] We express no opinion on the correctness of the Superior Court's decision in *Prensky*.

8

to its fundamental purpose and scope. Without a meeting of the minds on the primary issue, the trial court was essentially deciding the case, not simply entering an agreed-upon order. In these circumstances, we conclude that the trial court's order is not akin to a settlement, but rather, constitutes a final adjudicative order. Accordingly, the trial court's order is appealable, and we have jurisdiction to consider it.

## B. Scope of the Game Commission's Easement

On the merits, this matter presents a conundrum. Kapec's motion for entry of a consent judgment and the Game Commission's answer thereto demonstrate clearly that the parties had major disagreements concerning the facts, including the origin and nature of the easement enjoyed by the Game Commission. Consistent with his previous pleadings, Kapec maintained that the Game Commission had no easement over his private road but had merely used the road "with his family's consent for decades." RR at 113a. In response, the Game Commission reiterated its opposing position that it had held an easement from the time of conveyance of the lands of which Tract 13 was part. *Id.* at 120a. In his motion for entry of a consent judgment, Kapec also consented to what he evidently viewed as a new easement, which he proposed should be "in favor of the [Game Commission] and only the [Game Commission], covering substantially the same dimensions as the private road . . . ." *Id.* at 114a. The Game Commission responded that it already possessed an easement that allowed access by all lawful users of Tract 13. *Id.* at 120a.

Notwithstanding these major outstanding factual disputes, which were evident on the face of the motion for entry of a consent judgment and the answer

9

thereto, the trial court entered an order directing the parties to submit an agreed confirmatory deed within 30 days. RR at 125a-26a. The parties, evidently by agreement, submitted competing proposed confirmatory deeds and supporting briefs after they were unable to agree on all the terms of a confirmatory deed. *See id.* at 206a. However, they did not submit any stipulated facts. Thus, the unresolved questions of fact remained, with no hearing having been held, no evidence admitted, and no motion for summary judgment having been filed.[3] Indeed, it is notable that at the subsequent status conference discussed above, both sides proposed to submit certain pieces of evidence. *See id.* at 216a-17a. The trial court refused to take any evidence because the proceeding was a conference, not a hearing. *Id.* at 217a. Nonetheless, the proffers of evidence demonstrated both sides' implicit recognition that there were remaining material disputed facts.[4]

Among the issues raised by Kapec on appeal to this Court, his brief asserts error by the trial court in finding facts not supported by record evidence. Kapec Br. at 14-16. Kapec argues, in pertinent part:

> How, then, did the trial court defend its decision? By noting, without any evidentiary support, that various deeds in the parties' chains of title obliquely referred to [] Kapec's driveway as a "public road." [RR] at 241a. This conclusion is not supported by the record. For the most part, those references to a "public road" are so vague that the road to which the deed refers cannot be ascertained.

---

[3] The reproduced record includes various correspondence between the parties from 1990 to 2021 relating to the easement dispute. RR at 153a-200a. However, the reproduced record contains no stipulation to the authenticity or admissibility of the correspondence as evidence; nor was there ever a hearing or trial at which any witness could testify concerning the dispute.

[4] In this regard, this case presents a contrast to *Prensky v. Talaat*, 291 A.3d 25, 27 (Pa. Super. 2023), where the parties stipulated to the pertinent facts that Prensky's poultry had trespassed on Talaat's property and that runoff from her property containing manure was entering Talaat's property.

Despite the patent vagueness and lack of evidentiary support linking those references to the private road in question, the trial court nevertheless leaped to the conclusion that these references to a "public road" somehow proved that [] the Game Commission's easement "has been utilized by [the Game Commission's] licensees, invitees, permittees, contractors, agents, and other lawful state game lands users since 1924." [RR] at 240a-[]41a. But, under this Court's caselaw, such scant record evidence is not enough to create an implied public easement.

In fact, the lone ascertainable "public road" reference in the record actually contradicts the trial court's conclusions. The 1924 Special Warranty Deed references a "public road" that traverses from "Long Pond to Jamison City." "Long Pond" is now known as "Ganoga Lake." The private road at issue in this litigation does not travel to Ganoga Lake. But, nearby Sullivan Falls Road—an actual public road—does. The trial court failed to consider this disqualifying fact. And, instead, utilizes language in that deed to reach a conclusion the deed plainly refutes.

To be clear, the road in question is not and has never been a public road. There is no record of a dedication or acceptance by any public authority. The key case on this substantive point is *Leistner v. Borough of Franklin Park*[, 771 A.2d 69 (Pa. Cmwlth. 2001)]. Just like this case, *Leistner* involved a private roadway that provided access to public recreational land. *See* [*id.* at] 70-71 . . . . The roadway's owners sued the Borough, arguing that the government had unduly burdened them by allowing pedestrians to cross their private roadway to access the recreational lands. *See id.* at 73. Just like the lower court here, the trial court in *Leistner* rejected the landowners' argument, reasoning that the road was a public road because members of the public had had access to it for more than 21 years. *Id.* at 73. But on appeal, this Court reversed, noting that "[a]lthough the Borough contends that the Park was open to the public shortly after it was purchased[, . . .] no testimony established that the public actually began to *use* [the private roadway] to access the Park at that time[.]" *Id.* at 74 (emphasis added). Thus, there was insufficient

11

> evidence for the trial court to determine the general public's right to use the road. *See id.*
>
> So too here. The chain of title may refer to a "public road," but nothing in the record indicates which "public road" or how frequently the public has actually used it as such. [] Thus, on this record—a record on which [the] Game Commission accepted a consent judgment at its own risk— there was no sound basis for the trial court to conclude that the Game Commission's easement rights can somehow extend to the general public.

*Id.* (footnote omitted). We agree with Kapec. Moreover, the record in this case was insufficient to allow the trial court to make findings of fact without an evidentiary hearing and nothing in the reproduced record indicates an agreement by the parties to allow fact-finding on the record as it existed before the trial court.

In addition, we conclude that the record before this Court is inadequate to allow meaningful review on appeal. Recently, in *Hidden Ridge Condominium Associations v. Sabatino* (Pa. Super., No. 873 WDA 2021, filed Mar. 9, 2023) 2023 Pa. Super. Unpub. LEXIS 572,[5] the Superior Court considered a trial court's failure to conduct a hearing before ruling on a petition to enforce a settlement agreement. The matter involved numerous disputed facts, but the record was undeveloped, and the trial court's findings of fact were conclusory and made without a hearing to consider evidence of one party's affirmative defenses. Slip op. at 15-16, 2023 Pa. Super. Unpub. LEXIS 572 at *17. As a result, the Superior Court concluded that it was unable to determine whether the trial court's factual findings were supported by record evidence. Slip op. at 16-17, 2023 Pa. Super. Unpub. LEXIS 572 at *18-19. Accordingly, the Superior Court vacated the trial court's decision and remanded the

---

[5] We cite this unreported Superior Court opinion as persuasive authority pursuant to Section 37B of the Superior Court's Internal Operating Procedures. 210 Pa. Code § 65.37B. *See also Lerch*.

12

matter for further proceedings. Slip op. at 19, 2023 Pa. Super. Unpub. LEXIS 572 at *17. Here, we similarly conclude that, without a record including properly admitted documentary and testimonial evidence, we are unable to conduct a meaningful review of the propriety of the trial court's factual findings. Therefore, like the Superior Court in *Hidden Ridge*, we are constrained to vacate the trial court's order and remand this matter for further proceedings.

## IV. Conclusion

Based on the foregoing discussion, we vacate the trial court's order and remand this matter for further proceedings consistent with this opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania :
Game Commission :
 :
 v. :
 :
Lamont Kapec, : No. 1185 C.D. 2022
 Appellant :

# O R D E R

AND NOW, this 16th day of October, 2023, the order of the Court of Common Pleas of the 44th Judicial District, Sullivan County Branch – Civil Division (trial court) dated September 16, 2022 is VACATED and this matter is REMANDED to the trial court for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge